IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

       Plaintiffs,

                                  CASE NO:  11-cv-15481

v

                                  HON. PATRICK J. DUGGAN

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON ("JAY") MCDOWELL, individually
and in his official capacity as a teacher in the Howell
Public School District,

       Defendants.
_____/

**NOTICE OF HEARING**

**MOTION FOR SUMMARY JUDGMENT ON
BEHALF OF DEFENDANT JOHNSON MCDOWELL**

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
BEHALF OF DEFENDANT JOHNSON MCDOWELL**

**CERTIFICATE OF SERVICE**

Respectfully submitted,

PLUNKETT COONEY

s/Suzanne P. Bartos (P36490)
Attorney for Defendant McDowell
535 Griswold, Suite 2400
Detroit, MI 48226-3260
Direct Dial:  (313) 983-4741
sbartos@plunkettcooney.com

Dated:  November 15, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

      Plaintiffs,

                                CASE NO:  11-cv-15481

v

                                HON. PATRICK J. DUGGAN

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON ("JAY") MCDOWELL, individually
and in his official capacity as a teacher in the Howell
Public School District,

      Defendants.
_____/

| | |
|---|---|
| Richard Thompson (P21410) | Suzanne P. Bartos (P36490) |
| Thomas More Law Center | Plunkett Cooney |
| Attorneys for Plaintiff | Attorneys for Defendant McDowell |
| 24 Frank Lloyd Wright Drive | 535 Griswold, Suite 2400 |
| P.O. Box 393 | Detroit, MI 48226 |
| Ann Arbor, MI 48106 | (313) 983-4741 |
| (734) 827-2001 | sbartos@plunkettcooney.com |
| rthompson@thomasmore.org | |
| | |
| Robert J. Muise (P62849) | Roy H. Henley (P39921) |
| American Freedom Law Center | Thrun Law Firm, P.C. |
| Co-counsel for Plaintiff | Attorneys for Defendant Howell |
| P.O. Box 131098 | 2900 West Road, Suite 400 |
| Ann Arbor, MI 48113 | P.O. Box 2575 |
| (734) 635-3756 | East Lansing, MI 48826-2575 |
| rmuise@americanfreedomlawcenter.org | (517) 484-8000 |
| | rhenley@thrunlaw.com |

_____/

## NOTICE OF HEARING

To:        Counsel of Record

        **PLEASE TAKE NOTICE** that the within motion will be heard before the

Honorable Patrick J. Duggan at a time and date to be set by the court.

Respectfully submitted,

PLUNKETT COONEY

s/Suzanne P. Bartos (P36490)
Attorney for Defendant McDowell
535 Griswold, Suite 2400
Detroit, MI 48226-3260
Direct Dial:  (313) 983-4741
sbartos@plunkettcooney.com

Dated:  November 15, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

       Plaintiffs,

                                      CASE NO:  11-cv-15481

v

                                      HON. PATRICK J. DUGGAN

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON ("JAY") MCDOWELL, individually
and in his official capacity as a teacher in the Howell
Public School District,

       Defendants.

_____/

| | |
|---|---|
| Richard Thompson (P21410)<br>Thomas More Law Center<br>Attorneys for Plaintiff<br>24 Frank Lloyd Wright Drive<br>P.O. Box 393<br>Ann Arbor, MI 48106<br>(734) 827-2001<br>rthompson@thomasmore.org | Suzanne P. Bartos (P36490)<br>Plunkett Cooney<br>Attorneys for Defendant McDowell<br>535 Griswold, Suite 2400<br>Detroit, MI 48226<br>(313) 983-4741<br>sbartos@plunkettcooney.com |
| Robert J. Muise (P62849)<br>American Freedom Law Center<br>Co-counsel for Plaintiff<br>P.O. Box 131098<br>Ann Arbor, MI 48113<br>(734) 635-3756<br>rmuise@americanfreedomlawcenter.org | Roy H. Henley (P39921)<br>Thrun Law Firm, P.C.<br>Attorneys for Defendant Howell<br>2900 West Road, Suite 400<br>P.O. Box 2575<br>East Lansing, MI 48826-2575<br>(517) 484-8000<br>rhenley@thrunlaw.com |

_____/

**MOTION FOR SUMMARY JUDGMENT ON
BEHALF OF DEFENDANT JOHNSON MCDOWELL**

    **NOW COMES** defendant, Johnson McDowell, by and through his attorneys, Plunkett

Cooney, and for his Motion for Summary Judgment states as follows:

    1.    Plaintiff has brought this claim on behalf of her two sons alleging Daniel's rights

were violated when he was suspended from economics class on 10/20/10.

2.      Plaintiff claims Daniel was suspended from class for expressing his religious beliefs in violation of his First Amendment right to free speech and in violation of equal protection under the law.

3.      Plaintiff asserts defendant's actions had a chilling effect on her other son, Drake.

4.      Defendant is entitled to qualified immunity since his actions did not violate a clearly established right and he legally should not have known that what he did would violate plaintiff's rights.

5.      Plaintiff did not have a First Amendment right to make the bullying statement; therefore, being removed from class is not actionable.

6.      Plaintiff cannot show he was treated differently under the law than non-Catholics, so he cannot pursue an equal protection claim.

7.      Plaintiff's damages, if any, were *de minimis*.

8.      Plaintiff Drake Glowacki cannot show how defendant's actions had a chilling effect on his speech.

**WHEREFORE,** defendant requests this Honorable Court to dismiss plaintiffs' cause of action pursuant to FRCP 12(b)(6) and 56(c).

Respectfully submitted,

PLUNKETT COONEY

s/Suzanne P. Bartos (P36490)
Attorney for Defendant McDowell
535 Griswold, Suite 2400
Detroit, MI 48226-3260
Direct Dial:  (313) 983-4741
sbartos@plunkettcooney.com

Dated:  November 15, 2012

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

        Plaintiffs,

                                    CASE NO:  11-cv-15481

v

                                    HON. PATRICK J. DUGGAN

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON ("JAY") MCDOWELL, individually
and in his official capacity as a teacher in the Howell
Public School District,

        Defendants.

_____/

| | |
|---|---|
| Richard Thompson (P21410) | Suzanne P. Bartos (P36490) |
| Thomas More Law Center | Plunkett Cooney |
| Attorneys for Plaintiff | Attorneys for Defendant McDowell |
| 24 Frank Lloyd Wright Drive | 535 Griswold, Suite 2400 |
| P.O. Box 393 | Detroit, MI 48226 |
| Ann Arbor, MI 48106 | (313) 983-4741 |
| (734) 827-2001 | sbartos@plunkettcooney.com |
| rthompson@thomasmore.org | |
| | |
| Robert J. Muise (P62849) | Roy H. Henley (P39921) |
| American Freedom Law Center | Thrun Law Firm, P.C. |
| Co-counsel for Plaintiff | Attorneys for Defendant Howell |
| P.O. Box 131098 | 2900 West Road, Suite 400 |
| Ann Arbor, MI 48113 | P.O. Box 2575 |
| (734) 635-3756 | East Lansing, MI 48826-2575 |
| rmuise@americanfreedomlawcenter.org | (517) 484-8000 |
| | rhenley@thrunlaw.com |

_____/

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ON BEHALF OF DEFENDANT JOHNSON MCDOWELL**

## TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES.................................................................................................... i

INTRODUCTION ............................................................................................................. 1

FACTS ......................................................................................................................... 1

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT .................................................................................................................. 5

   I.      DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY. ................................... 5

     A.   Was the right clearly established?................................................................. 5

     B.   Would defendant have reasonably known his actions would violate plaintiff's
         constitutional rights?........................................................................................ 7

   II.     PLAINTIFFS' FIRST AMENDMENT RIGHTS WERE NOT VIOLATED............... 9

   III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF EQUAL
         PROTECTION RIGHTS. ............................................................................ 12

   IV.   PLAINTIFFS' CLAIMS MUST BE DISMISSED AS THEY ARE DE MINIMIS. ... 14

   V.    PLAINTIFF DRAKE GLOWACKI HAS NOT SET FORTH ANY CLAIM OF
         CONSTITUTIONAL VIOLATION. ............................................................. 15

RELIEF REQUESTED..................................................................................................... 15

CERTIFICATE OF SERVICE

## INDEX OF AUTHORITIES

Page

OUT-OF-STATE CASE(S):

*Reeves v. Jensen,*
   2007 WL 1464260 ................................................................................................ 14

*Zamecnik v. Indian Prairie School District,*
   207 WL 1141597 (ND Ill. 2007) ............................................................... 10, 11, 12

FEDERAL CASE(S):

*Anderson v Liberty Lobby, Inc.,*
   477 US 242, 252 (1986) ......................................................................................... 4

*Anderson v. Creighton,*
   483 U.S. 635, 107 Sup. Ct. 3034 (1987) ........................................................... 5, 7

*Barr v. Lafon,*
   538 F.3d 554 (2008) ...................................................................................... 6, 7, 9

*Bethel School District #403 v. Fraser,*
   478 U.S. 675 106 S. Ct. 3159 (1986) ........................................................... 7, 9, 10

*Buchanan v. City of Bolivar,*
   99 F.3d 1352, 1360 (6th Circ. 1996) .................................................................. 13

*Celotex Corp v Catrett,*
   477 US 317, 323 (1986) ......................................................................................... 4

*Center for Bio Ethical Reform v. City of Springboro,*
   477 F.3d 807 (6th Cir. 2007) ............................................................................... 14

*Colby v. J.C. Penney,*
   811 F.2d 1119, 1123 (7th Cir. 1997) .................................................................. 10

*Dickens v. Johnson County Board of Education,*
   661 F.Supp (E.D. Tenn. 1987) ........................................................................... 14

*Fenton v. Stear,*
   423 F.Supp. 767 (WD Pa. 1976) ........................................................................ 14

*Goss v. Lopez,*
    418 U.S. 565 95 S.Ct. 729 (1975) ......................................................................................... 13

*Harlow v. Fitzgerald,*
    457 U.S. 800, 102 Sup. Ct. 2727 (1982) ................................................................................ 5

*Harper v. Poway,*
    445 F.3d 1166 (2006) ................................................................................................ 9, 10, 11

*Hazelwood School District v. Kuhlmeier,*
    484 U.S, 260, 266, 108 S.Ct. 562, 98 L.Ed,2d 592 (1988).................................................... 10

*Ingraham v. Wright,*
    430 U.S. 651 97 S.Ct. 1401 (1977) ...................................................................................... 13

*Morris v. Frederick,*
    551 U.S. 393, 127 S.Ct. 2618 (2007) ...................................................................................... 9

*Nixon v. Northern Local School District Board of Education,*
    383 F.Supp.2d 965 (2005) ...................................................................................................... 7

*Presek v. City of Brunswick,*
    794 F.Supp. 768 (ND Ohio 1992) ...................................................................................... 6, 8

*Tinker v. DesMoines Independent Community School District,*
    393 U.S. 503 89 S. Ct. 733 (1969) ..................................................................... 6, 7, 9, 10, 11

## COURT RULE(S):

FRCP 12(b)(6) ............................................................................................................................ 16

FRCP 56(c) ............................................................................................................................ 4, 16

## INTRODUCTION

Plaintiff has filed suit on behalf of her minor sons alleging their right to freedom of speech and equal protection have been violated.  This matter involves Dan Glowacki being suspended from economics class on October 20, 2010, by teacher, Mr. McDowell, for making disruptive and bullying comments regarding homosexuals.

## FACTS

Defendant is a high school teacher and union president at Howell High School.  He teaches in the Social Studies Department, economics and world religion.  The class in question was introduction to economics.  In fall 2010, the national media reported heavily on the story of Tyler Clemente, the college student who took his life, apparently, due to bullying by his roommate.  Mr. Clemente was gay and his roommate secretly filmed him in a relationship with another man in the dormitory room and later put the video on the internet.  The story was just another of the tragic results of bullying in the school setting.  Teacher Wendy Hiller was very upset with the Clemente story and decided to wear a t-shirt she had made up to show support for the memory of Mr. Clemente (Exhibit A, Hiller deposition, pp. 10-12).  The t-shirt contained the words, "Tyler's Army," and "Fighting Evil with Kindess."  Many students and staff inquired about the shirt, and Ms. Hiller decided to make more shirts and give or sell them to various persons in the high school (Exhibit A, Hiller deposition, pp. 13-15).  The idea was to have the shirts in support of the upcoming National Anti Bullying Day (Exhibit A, Hiller deposition, p. 15).

Mr. McDowell obtained one of the t-shirts and decided to wear the t-shirt on October 20, National Anti Bullying Day.  Mr. McDowell also decided that in each of his classes he would

speak for a few moments about bullying and show three minutes of a video of a gay gentleman who, himself, considered suicide as a young adult due to bullying (Exhibit B, McDowell deposition, p. 144).  In fact, Mr. McDowell did these things without any problem or concern in each of his classes until the sixth hour economics class in question.

On that day, a female student came into the class wearing a confederate flag belt buckle. She was asked by Mr. McDowell to remove the item as she had done in the past.  She had no problem with this request and removed the buckle and put it in her backpack (Exhibit B, McDowell deposition, pp. 149-152).  Before class could begin, Dan Glowacki asked Mr. McDowell why the female student had to remove her belt buckle but gays could fly the rainbow flag (Exhibit B, McDowell deposition, pp. 153-154).  It's important to note that Glowacki raised the topic of homosexuality with this question.  Neither the video nor any discussion by Mr. McDowell had yet to occur.  Mr. McDowell attempted to explain the difference between the two symbols and how the confederate flag could be perceived as exclusionary and a symbol of hatred and discrimination while a rainbow flag symbolizes inclusion (Exhibit B, McDowell deposition, pp. 153-154).  Mr. Glowacki responded by stating, "I don't accept gays" (Exhibit B, McDowell deposition, p. 154).  Mr. McDowell replied that this was wrong; one could not announce in class how they did not accept a group of people (Exhibit B, McDowell deposition, p. 154).  Mr. McDowell asked Mr. Glowacki if that was, in fact, his position and Mr. Glowacki responded, "Yes, it's against my religion" (Exhibit B, McDowell deposition, p. 155).  Mr. McDowell, who had received education and training in religion, taught world religion in high school and at the college level, was aware that this was not a religious edict to segregate a group of persons.  Mr. McDowell told Mr. Glowacki this was not a religious edict and that if he believed it to be, he could not speak against a group of people (Exhibit B, McDowell deposition, pp. 155-156).  At

about the same time, another male student was entering the class (late) and chimed in, "I don't accept gays either. Can I get in the hallway?" Mr. McDowell sent the male student out of the class as well (Exhibit B, McDowell deposition, p. 180).

Dan Glowacki was sent down to the office. He had been suspended from class under the snap suspension policy of Howell School District (Exhibit C). This policy gives the teacher authority to send a student to the office for a class period. If the situation allows and the teacher agrees, the student is allowed back into class the next day after the parents have been notified. Mr. McDowell had intended on speaking with Mrs. Glowacki after school and allowing Dan back into class the following day (Exhibit B, McDowell deposition, p. 199).

Mr. McDowell believed he was authorized to suspend Dan from class based upon his obligation to insure the Howell students maintained a bully free school environment. Mr. McDowell believed the statement of "I don't accept gays" to be a bullying statement which offended other students (Exhibit B, McDowell deposition, p. 190). Mr. McDowell was aware there was at least one gay student in the class and believed the statement to be an infringement on the student's rights (Exhibit B, McDowell deposition, pp. 85-87). Mr. McDowell also believed the statement could be threatening to the other students (Exhibit B, McDowell deposition, pp. 83, 85-87). Mr. McDowell believed the statement to be against Howell School District Student Code (Exhibit B, McDowell deposition, pp. 53, 79-80).

After school that day, Mr. McDowell contacted Mrs. Glowacki and discussed the situation with her. She agreed that Dan had "stuck his nose where it didn't belong" and was going to have her son apologize to Mr. McDowell so that he could return to class the following day (Exhibit B, McDowell deposition, p. 74). The following day, complaints were made to the school district regarding this incident, and Mr. McDowell was removed from class pending an

investigation.  In the meantime, Dan Glowacki was removed from his class and transferred to another classroom.  Dan was not disciplined; there remains nothing in his file regarding the incident.  Dan finished his schooling without incident and graduated in June 2012 from Howell High School.  Drake, Dan's brother, was not involved and has never been disciplined for his religious expressions.  He is currently in the 11th grade at Howell High School.

Plaintiff has brought this suit against Mr. McDowell alleging his actions of suspending Dan from class that day was a violation of free speech rights, and he was also suspended based upon his religious beliefs in violation of the equal protection clause.  Defendant asserts that the cause of action must be dismissed due to the fact that:  (1)  He was acting in good faith and entitled to qualified immunity; (2) Dan Glowacki's comments were not protected as they were disruptive and infringed on the rights of others; (3) There is no evidence of a claim that Glowacki was treated differently based upon his religious beliefs.  Drake Glowacki's claims must be dismissed as there is no evidence of any violation of his rights or even a chilling effect on his speech; and (4) Any harm was *de minimis* and did not rise to the level of a constitutional violation.

## STANDARD OF REVIEW

Summary judgment should be granted when the moving party can show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FRCP 56(c).  Once the moving party has met its burden, the nonmoving party must demonstrate an essential element of its claim to defeat the motion for summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the nonmoving party cannot provide enough evidence that a reasonable jury could find for it, the motion for summary judgment should be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**ARGUMENT**

I.      <u>**DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.**</u>

The well-established standard is that a governmental official performing discretionary functions are generally sheltered from liability for civil damages when their actions do not violate clearly established constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 Sup. Ct. 2727 (1982) and *Anderson v. Creighton,* 483 U.S. 635, 107 Sup. Ct. 3034 (1987). The *Anderson* court expanded the standard by requiring a reviewing court to determine whether a reasonable person could have believed that they were acting lawfully in light of clearly established law and in light of the circumstances and information the defendant possessed at the time. 483 U.S. at 641. Thus, it is a twofold inquiry: (1) Whether the constitutional right was clearly established at the time by review of Supreme Court decisions as well as decisions from the Sixth Circuit; and (2) Whether the defendant legally should have known that his actions would violate the student's rights.

Defendant asserts that he is entitled to qualified immunity in suspending plaintiff from the economics class. Defendant argues that he did not violate a clearly established right which a reasonable person would have known and, further, he acted reasonably and in good faith in suspending plaintiff and the other student.

**A.**      **Was the right clearly established?**

Defendant asserts that plaintiff's right of freedom of speech was not clearly established under the scenario. The court is to look beyond a generalized right and determine if the particularized right in question was clearly established. *Anderson, supra.* In other words, did Mr. Glowacki have the constitutional right to make a statement in class that was, in and of itself, a bullying statement?

5

Plaintiff's own expert has testified that the statement, "I don't accept gays," could be interpreted as inappropriate (Exhibit E, Guernsey deposition, pp. 46 and 63). What made it constitutionally-protected free speech was plaintiff's intent, his meaning of the statement, that due to his religious beliefs he did not accept same sex marriage (Exhibit E, Guernsey deposition, p. 41). This intent was not explained by plaintiff; all that was said is that, "I am against gays," not that he didn't accept same sex marriage.

As stated in *Presek v. City of Brunswick,* 794 F.Supp. 768 (ND Ohio 1992), there is no definite guide to when a right is clearly established but it must be apparent in light of existing law. Plaintiff may argue that he was clearly exercising his freedom of speech by claiming it was actually a religious statement when he also said, "It is against my religion." The court must remember, though, that plaintiff did not insert "religion" into the discussion until after he made the bullying statement. Also, Mr. Schang was removed from class even though he did not claim any religious beliefs, merely that he did not "accept gays." Therefore, the court must not be fooled to believe that this is a religious freedom issue; it is simply a claim for violation of a right of free speech.

Defendant refers this court to its second argument for the complete discussion that defendant's actions did not violate plaintiff's right to free speech. In sum, defendant asserts that it is well settled that a school can regulate speech that a state could not outside the bounds of a school building. *Barr v. Lafon,* 538 F.3d 554 (2008). The Supreme Court, in *Tinker v. DesMoines Independent Community School District,* 393 U.S. 503 89 S. Ct. 733 (1969) held that a student's speech could be regulated if it caused a disruption or if it interfered with the rights of others to be let alone, whether the speech intrudes upon the rights of others. In *Bethel School*

*District #403 v. Fraser,* 478 U.S. 675 106 S. Ct. 3159 (1986), the court ruled that a school can limit speech in the interest of protecting others. *Bethel* at 683.

Taking this to the particularized analysis addressed in *Anderson,* there are no Sixth Circuit or Supreme Court decisions that would have placed Mr. McDowell on notice that suspending Mr. Glowacki for making this statement was a violation of his freedom of speech. In fact, it is just the opposite. In *Nixon v. Northern Local School District Board of Education,* 383 F.Supp.2d 965 (2005), plaintiff was wearing a t-shirt with anti-gay statements. He was told to remove the shirt as it was offensive. The court found in favor of the plaintiff acknowledging that under *Tinker* speech can be restricted if it is invading the rights of others to be secure and be let alone. The finding that wearing of the t-shirt by *Nixon* did not evidence intrusion into others' rights. *Nixon* at 974. Here, the plaintiff spoke words rather than displaying them on a t-shirt. As defendant testified, he believed there to be at least one gay student in the class, and making a statement of, "I don't accept gays," intrudes on the other students' rights (Exhibit B, McDowell deposition, pp. 83, 85-87). Further, in *Barr, supra,* the Sixth Circuit ruled in 2008 that it was not a violation of free speech to ban clothing that displayed divisive symbols.

Here, whether the plaintiff had the right to make a comment against gays was not clearly established. Just the opposite exists; the law states that conduct that infringes upon another's right is not free speech.

       **B.**    **Would defendant have reasonably known his actions would violate plaintiff's constitutional rights?**

The court must analyze the facts of this case in reaching a decision on whether a reasonable person, in the shoes of the defendant, would have known the actions would violate plaintiff's rights. The court must determine if defendant was acting reasonably. *Anderson,*

*supra; Presek, supra.* Defendant asserts he did act reasonably and refers the court to the following facts:

- Mr. McDowell did not receive training on First Amendment rights before this incident or how to interpret the policy (Exhibit B, McDowell deposition, pp. 40-55).

- The school maintained a school code which prohibited bullying (Exhibit D).

- Mr. McDowell had undergone training just a few months earlier on his obligations, as a teacher, to not tolerate bullying (Exhibit B, McDowell deposition, pp. 38, 43, 47-48).

- He suspected there were gay students in his classroom (Exhibit B, McDowell deposition, pp. 83, 85-87).

- He felt plaintiff's statement was a form of threat to the other students (Exhibit B, McDowell deposition, pp. 83, 85-87).

- He felt plaintiff's statement was a bullying remark as it was derogatory to a group of persons (Exhibit B, McDowell deposition, p. 190).

- He felt that he was losing control of the discipline in his class (Exhibit B, McDowell deposition, pp. 172-173).

- Other students felt upset by the comment made by plaintiff (Exhibit B, McDowell deposition, pp. 85-87).

- Plaintiff admitted that he understood how his statement would hurt a gay student's feelings (Exhibit F, Dan Glowacki deposition, pp. 45, 63).

- Plaintiff's own expert opined that the statement, "I don't accept gays," could be interpreted as inappropriate (Exhibit E, Guernsey deposition, pp. 46).

- Plaintiff's own expert agreed that defendant had an obligation to stop behavior he felt was bullying (Exhibit E, Guernsey deposition, p. 56).

- Plaintiff's own expert agreed that there is a conflict between the anti-bullying policy and freedom of speech that the defendant had to sort through.

Weighing all of the evidence of what occurred in the classroom on that day, the defendant asserts that not only were plaintiff's rights not violated, but he also acted reasonably entitling him to the protection of qualified immunity.

8

## II. PLAINTIFFS' FIRST AMENDMENT RIGHTS WERE NOT VIOLATED.

Schools have the authority to regulate speech that would otherwise be permissible outside the school setting. *Tinker* and *Fraser.* A school can regulate speech beyond what is determined under the *Tinker* standard to be a disruption or sexually explicit under *Fraser.* Speech can be regulated if it is determined to interfere with the rights of others to be secure and be let alone or intrude on others' rights. *Tinker, supra; Harper v. Poway,* 445 F.3d 1166 (2006); *Morris v. Frederick,* 551 U.S. 393, 127 S.Ct. 2618 (2007). The schools are given much deference in determining what is best in attending to a student's psychological and developmental needs. *Barr, supra* at p. 567.

Here, plaintiff made a statement perceived as bullying by Mr. McDowell. Mr. McDowell was aware of the school's anti-bullying policy and had recently attended training in preventing bullying in the classroom. He was taught to not accept the little things; the teacher needed to put a stop to all bullying. Mr. McDowell believed there was at least one student in his class that was gay and that he was also aware of the rash of gay minors committing suicide for being bullied. It was National Anti-Bullying Day, so it was safe to assume that Mr. McDowell had a heightened awareness of gay bullying.

The discussion between plaintiff and defendant regarding the difference between the rainbow flag and the confederate flag may have been an appropriate teaching experience answering a student's questions. But without prompting, plaintiff said, "I don't accept gays." This comment was inappropriate. It was this comment that defendant believed was a bullying statement and against the school code. Plaintiff's own expert opined that the statement alone could be perceived as inappropriate but that Mr. McDowell should have gone further with questioning regarding the intent of the statement (Exhibit E, Guernsey deposition, pp. 46).

9

Plaintiff went on to discuss with Mr. McDowell by speaking to how gays were against his religion.  Mr. McDowell felt that he was losing control of the classroom.  Plaintiff continued the discussion even after the difference between the confederate flag and rainbow flag was explained.  Defendant testified that plaintiff was hijacking the class and continued the discussion.  Mr. McDowell wanted him to stop the discussion so they could move on with the lesson plan (Exhibit B, McDowell deposition, pp. 160-73).  The statement by plaintiff was also disruptive to the classroom.  Mr. McDowell described how plaintiff continued to discuss the issue of the confederate flag versus the rainbow flag and how he didn't accept gays (Exhibit B, McDowell depositions, pp. 160-173).  Plaintiff even admitted that he caused a disruption; he apologized the next day to Mr. McDowell (Exhibit F, Daniel Glowacki deposition, p. 69).  The disruption is evidenced by the fact that another student believed he could get out of class also by joining the plaintiff's opinion.  Mr. Schang asked if he could leave if he said he didn't accept gays.  He made that comment and was asked to leave as well.

The defendant admits that, for purposes of this argument, only, the words "I don't accept gays" are not lewd or profane for it to be analyzed under the *Fraser* standard, nor is it school sponsored to trigger the analysis in *Hazelwood School District v. Kuhlmeier,* 484 U.S, 260, 266, 108 S.Ct. 562, 98 L.Ed,2d 592 (1988).  Therefore, this matter must be decided under *Tinker.*  As indicated earlier, *Tinker* doesn't refer to only speech that is disruptive to the school operations but also speech that impinges upon the rights of others.  *Tinker* at 509.

Defendant relies heavily on the matter of *Zamecnik v. Indian Prairie School District,* 207 WL 1141597 (ND Ill. 2007) and *Harper, supra.*  Even though these cases are outside of the Sixth Circuit, they are to be given "respectful consideration and followed where possible."  *Colby v. J.C. Penney,* 811 F.2d 1119, 1123 (7th Cir. 1997).

In *Harper,* the plaintiff was suspended for wearing a t-shirt which condemned homosexuals.  The court relied on *Tinker* to hold that the shirt impinged upon the rights of others.  The court stated that:

> We conclude that *Harper's* wearing of his t-shirt "colli[des] with the rights of other students: in the most fundamental way. *Tinker,* 393 U.S. at 508, 89 S.Ct. 733.  Public school students who may be injured by verbal assaults on the basis of a core identifying characteristic such as race, religion, or sexual orientation, have a right to be free from such attacks while on school campuses. As *Tinker* clearly states, students have the right to "be secure and to be let alone." *Id.*  Being secure involves not only freedom from physical assaults but from psychological attacks that cause young people to question their self-worth and their rightful place in society.  The "right to be let alone" has been recognized by the Supreme Court, of course, as "the most comprehensive of rights and the right most valued by civilized men." *Hill v. Colorado,* 530 U.S. 703, 716-17, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)(quoting *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandies, J., dissenting)).  Indeed,, the "recognizable privacy interest in avoiding unwanted communication" is perhaps most important "when persons are 'powerless to avoid' it." *Id.* At 716, 120 S.Ct. 2480 (quoting *Cohen v. California,* 403 U.S. 15, 21-22, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)).  Because minors are subject to mandatory attendance requirements, the Court has emphasized "the obvious concern on the part of parents, and school authorities acting *in loco parentis,* to protect children—especially in a captive audience…" *Fraser,* 478 U.S. at 684, 106 S.Ct. 3159.  Although name-calling is ordinarily protected outside the school context, "[s]tudents cannot hide behind the First Amendment to protect their 'right' to abuse and intimidate other students at school." *Sypniewski v. Warren Hills Reg'l Bd. of Educ.,* 307 F.3d 243, 264 (3rd Cir. 2002).

*Poway* at 1178.

Likewise, in *Zamecnik,* the courts upheld the defendant's banning of certain anti-gay statements on t-shirts.  The court agreed with the *Harper* court that a school has the right to protect its students from injurious speech.  The court stated:

> In sum, school has the right to teach civic responsibility and tolerance as part of its basic educational mission; it need not as a

11

> *quid pro quo* permit hateful and injurious speech that runs counter
> to that mission.

*Zamecnik* at p. 8.

The statement made by plaintiff was inappropriate according to plaintiff's expert (Exhibit E, Guernsey deposition, p. 46), defendant's expert, defendant Mr. Glowacki, and plaintiff, himself (Exhibit F, Dan Glowacki deposition, p. 63). Mr. McDowell was in the position to know if the comment was offensive to other students in his class; he was able to view the reaction of fellow students. He testified that a student was on the verge of tears (Exhibit B, McDowell deposition, pp. 83, 85-87). Plaintiff, himself, agreed that his statement could hurt the feelings of a gay student (Exhibit F, Dan Glowacki deposition, p. 40, 63).

The statement by plaintiff was also disruptive. Mr. McDowell explained how plaintiff asked the question regarding the rainbow flag but continued to discuss his non-acceptance of gays. The disruption is clear by the fact that another student made the same comment to be excused from class.

Since plaintiff did not have a constitutional right to impinge on the rights of others, Mr. McDowell did not violate plaintiff's First Amendment rights.

### III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF EQUAL PROTECTION RIGHTS.

Plaintiff asserts that Glowacki's right to equal protection under the laws was violated by his suspension from class based upon his religion. Plaintiff asserts that defendant favored homosexual speech over anti-homosexual speech by suspending plaintiff from economics class when he expressed this speech. Plaintiff asserts his speech was based on his religious beliefs; therefore, defendant discriminated against him on the basis of his religion.

12

The equal protection clause in the Fourteenth Amendment prohibits a state from denying to any person equal protection of the laws. Persons who are in all relevant respects alike must not be treated differently. *Buchanan v. City of Bolivar,* 99 F.3d 1352, 1360 (6th Circ. 1996).

The plaintiff has the burden of showing that he was treated differently because of his religious beliefs and that McDowell's actions bore no rational relationship to a legitimate government purpose. There is no evidence that the plaintiff was treated differently than non-Catholics. In fact, Mr. Schang was suspended along with the plaintiff for making the statement, "I don't accept gays," and there is no evidence of him commenting on religion or basing it upon his religious beliefs. Therefore, plaintiff's claim that he was suspended for his religious beliefs is unfounded. He was treated the same as Mr. Schang. Also, defendant denies suspending him on the basis of his religion (Exhibit B, McDowell deposition, p. 113). Plaintiff has failed to set forth any evidence to the contrary. For example, there is no allegation that Mr. McDowell suspended others for religious beliefs or making a derogatory statement toward Catholics, etc. Plaintiff has the burden of demonstrating that the defendant treated persons in a disparate manner. *Buchanan* at 1360. Since plaintiff has failed to do so, the equal protection claim must fail.

In the alternative, defendant asserts that plaintiff's suspension was rationally related to a legitimate government interest. It is clear that schools must be able to assess the need for and mete out discipline in order to maintain a safe environment within the school. *Ingraham v. Wright,* 430 U.S. 651 97 S.Ct. 1401 (1977) and *Goss v. Lopez,* 418 U.S. 565 95 S.Ct. 729 (1975). The school district has authorized teachers to immediately suspend a student for the class period. The teacher must send the student to the office where the administrators will determine if discipline is necessary (Exhibit C, suspension policy). That is what occurred in this case—

13

plaintiff and Schang were sent to the office where an investigation ensued.  Upon conducting the investigation, it was determined the students would be returned to class the following day without any discipline.

Since maintenance of a safe school environment which includes the ability to discipline a student is a legitimate government interest and the conduct of Mr. McDowell was an effort to pursue that legitimate government interest, plaintiff's claim of violation of equal protection must be dismissed.

## IV.    PLAINTIFFS' CLAIMS MUST BE DISMISSED AS THEY ARE DE MINIMIS.

Plaintiffs' claims must be dismissed as he, at best, can only assert a *de minimis* violation of his constitutional rights.  The courts reviewed *de minimis* injury in the First Amended context in *Reeves v. Jensen*, 2007 WL 1464260, relied on the published decision of *Center for Bio Ethical Reform v. City of Springboro,* 477 F.3d 807 (6th Cir. 2007) to find that a *de minimis* threat or inconsequential action is not sufficient to allege a First Amendment violation.

With regard to the equal protection claim, the *de minimis* violation alleged is not actionable.  As stated in *Dickens v. Johnson County Board of Education,* 661 F.Supp (E.D. Tenn. 1987), not every use or misuse of school discipline implicates the Fourteenth Amendment.  In *Dickens,* plaintiff was placed in a time out for 4½ hours on six consecutive days.  The court found this to be a *de minimis* interference with his rights.  Likewise, requiring a student to attend detention rather than a field trip was *de minimis* in *Fenton v. Stear,* 423 F.Supp. 767 (WD Pa. 1976).  In *Rasmus v. State of Arizona,* 939 F.Supp. 709 (1996), placing the plaintiff in a time out room for 10 minutes was considered *de minimis.*

Here, plaintiff missing 20 minutes of one economics class is, at best, a *de minimis* interference with his rights and insufficient to set forth a claim for violation of First or Fourteenth Amendment.

### V.   PLAINTIFF DRAKE GLOWACKI HAS NOT SET FORTH ANY CLAIM OF CONSTITUTIONAL VIOLATION.

Plaintiffs brought this Complaint on behalf of Daniel Glowacki and his brother, Drake Glowacki, who at the time was a 9th grade student in Howell School District.  The assertion was that Mr. McDowell's actions had a chilling effect on the rights of Daniel and Drake Glowacki. Plaintiffs asserted that, due to Mr. McDowell's suspension of Daniel Glowacki, they would feel as if they were unable to assert their right to free speech while a student at Howell School District.

Plaintiffs have failed to set forth any evidence in support of the claim that Mr. McDowell's actions had a chilling effect.  Daniel Glowacki didn't testify that he felt he was unable to assert his right at any other time.  Likewise, Drake Glowacki testified that, at no time, has he ever felt as if he has been unable to assert his right to free speech while a student at Howell School District (Exhibit G, Drake Glowacki deposition, pp. 8-9).

Based upon the fact that plaintiff has no evidence of a chilling effect on the plaintiffs' actions, the claim filed by Drake must be dismissed.

### RELIEF REQUESTED

Based upon the above arguments, defendant requests that this Court dismiss plaintiffs'

Complaint based on FRCP 12(b)(6) and 56(c).

Respectfully submitted,

PLUNKETT COONEY


s/Suzanne P. Bartos (P36490)
Attorney for Defendant McDowell
535 Griswold, Suite 2400
Detroit, MI 48226-3260
Direct Dial:  (313) 983-4741
sbartos@plunkettcooney.com

Dated:  November 15, 2012
Open.21720.21028.12363936-1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

                    Plaintiffs,

                                                    CASE NO:  11-cv-15481

v                                                   HON. PATRICK J. DUGGAN

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON ("JAY") MCDOWELL, individually
and in his official capacity as a teacher in the Howell
Public School District,

                    Defendants.
_____/

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2012, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to the following:

      Robert J. Muise, American Freedom Law Center
      Richard Thompson, Thomas More Law Center
      Roy H. Henley, Thrun Law Firm, P.C.


                          s/Suzanne P. Bartos (P36490)
                          PLUNKETT COONEY
                          Attorney for Defendant McDowell
                          535 Griswold, Suite 2400
                          Detroit, MI 48226-3260
                          Direct Dial:  (313) 983-4741
                          E-Mail:  sbartos@plunkettcooney.com

Open.21720.21028.12363936-1

1