# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

                Plaintiffs,

v.

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON ("JAY") McDOWELL,
individually and in his official capacity as
teacher in the Howell Public School District,

                Defendants.

Case No. 2:11-cv-15481-PJD-DRG

Hon. Patrick J. Duggan

---

**AMERICAN FREEDOM LAW CENTER**
Robert J. Muise (P62849)
Attorney for Plaintiffs
P.O. Box 131098
Ann Arbor, Michigan 48113
rmuise@americanfreedomlawcenter.org
(734) 635-3756

**THOMAS MORE LAW CENTER**
Erin Mersino (P70886)
Attorneys for Plaintiffs
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
emersino@thomasmore.org
(734) 827-2001

**THRUN LAW FIRM, P.C.**
Roy H. Henley (P39921)
Attorneys for Defendant Howell Public
School District
2900 West Road, Ste. 400
P.O. Box 2575
East Lansing, Michigan 48826-2575
rhenley@thrunlaw.com
(517) 484-8000

**PLUNKETT COONEY**
Suzanne P. Bartos (P36490)
Attorneys for Defendant McDowell
535 Griswold Street, Ste. 2400
Detroit, Michigan 48226
sbartos@plunkettcooney.com
(313) 983-4741

---

## DEFENDANT HOWELL PUBLIC SCHOOLS'
## MOTION FOR SUMMARY JUDGMENT

Defendant Howell Public Schools, through its undersigned counsel, states the following in support of its Motion for Summary Judgment:

1.    The Howell Public Schools moves for summary judgment for the reasons stated in detail in the attached brief.

2.    On November 7, 2011, the School District's counsel contacted Plaintiffs' counsel to ask for concurrence in the relief requested by this motion.  Such concurrence was not forthcoming, thereby necessitating the filing of this motion.

WHEREFORE, Defendant Howell Public Schools respectfully requests that this Court grant it summary judgment of Plaintiffs' claim in their entirety.  The School District further requests an award of costs and reasonable attorney fees.

Respectfully submitted,

THRUN LAW FIRM, P.C.
Attorneys for Defendant Howell Public
School District

Dated:  November 15, 2012          /s/ Roy H. Henley
                                                    Roy H. Henley (P39921)
                                                    2900 West Road
                                                    P.O. Box 2575
                                                    East Lansing, Michigan 48826-2575
                                                    Telephone:  (517) 484-8000
                                                    rhenley@thrunlaw.com

-1-

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

                 Plaintiffs,

v.

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON ("JAY") McDOWELL,
individually and in his official capacity as
teacher in the Howell Public School District,

                 Defendants.

Case No. 2:11-cv-15481-PJD-DRG

Hon. Patrick J. Duggan

---

AMERICAN FREEDOM LAW CENTER
Robert J. Muise (P62849)
Attorney for Plaintiffs
P.O. Box 131098
Ann Arbor, Michigan 48113
rmuise@americanfreedomlawcenter.org
(734) 635-3756

THOMAS MORE LAW CENTER
Erin Mersino (P70886)
Attorneys for Plaintiffs
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
emersino@thomasmore.org
(734) 827-2001

THRUN LAW FIRM, P.C.
Roy H. Henley (P39921)
Attorneys for Defendant Howell Public
School District
2900 West Road, Ste. 400
P.O. Box 2575
East Lansing, Michigan 48826-2575
rhenley@thrunlaw.com
(517) 484-8000

PLUNKETT COONEY
Suzanne P. Bartos (P36490)
Attorneys for Defendant McDowell
535 Griswold Street, Ste. 2400
Detroit, Michigan 48226
sbartos@plunkettcooney.com
(313) 983-4741

---

# BRIEF SUPPORTING DEFENDANT HOWELL PUBLIC SCHOOLS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR
THE RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

STATEMENT OF QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     I.     PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     II.    OPERATIVE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     I.     THE SCHOOL DISTRICT IS ENTITLED TO SUMMARY
           JUDGMENT OF PLAINTIFF DRAKE GLOWACKI'S
           UNSUPPORTED CLAIM THAT HIS FREE SPEECH RIGHTS
           HAVE BEEN "CHILLED" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     II.    THE SCHOOL DISTRICT SHOULD BE GRANTED SUMMARY
           JUDGMENT OF THE STUDENT'S FIRST AMENDMENT CLAIM DUE
           TO THE *DE MINIMIS* NATURE OF THE ALLEGED VIOLATION . . . . . . . . . 5

     III.   THE COURT SHOULD GRANT THE SCHOOL DISTRICT
           SUMMARY JUDGMENT OF THE STUDENT'S EQUAL
           PROTECTION CLAIM, SINCE THE TEACHER ACTED IN A
           CONSTITUTIONALLY RATIONAL FASHION . . . . . . . . . . . . . . . . . . . . . . . 8

     IV.   ALTERNATIVELY, THE SCHOOL DISTRICT SHOULD BE GRANTED
           SUMMARY JUDGMENT BECAUSE IT CANNOT BE HELD LIABLE
           UNDER PLAINTIFFS' "FAILURE TO TRAIN" THEORY . . . . . . . . . . . . . . . 12

           A.     Failure to Adequately Train . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           B.     Failure to Act in Response to Repeated Complaints . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR THE RELIEF REQUESTED

*Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*City of Canton v. Harris*, 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Currie v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723 (E.D. Mich. 2006),
    *aff'd* 513 F.3d 570 (6th Cir. 2008), *cert. denied* 555 U.S. 1069 (2008) . . . . . . . . . . . 15, 16

*Ellis v. Cleveland Municipal Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006) . . . . . . . . . . . . . . . . . 13, 17

*Monell v. Department of Social Svcs.*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Morrison v. Board of Educ. of Boyd Co.*, 521 F.3d 602 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . 4

*Scarbrough v. Morgan Co. Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 9

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Zelnik v. Fashion Institute of Tech.*, 464 F.3d 217 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12, 13, 17

# INDEX OF AUTHORITIES

**Cases**

*Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bauer v. Village of Mt. Sterling*, 44 F.E.D. Appx. 670 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . 11

*Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*City of Canton v. Harris*, 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Currie v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723 (E.D. Mich. 2006),
     *aff'd* 513 F.3d 570 (6th Cir. 2008), *cert. denied* 555 U.S. 1069 (2008) . . . . . . . . . . . 15, 16

*Ellis v. Cleveland Municipal Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006) . . . . . . . . . . . . . . . . . 13, 17

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Henley v. Tullahoma City Sch. System*, 84 Fed. Appx. 534, 2003 U.S. App.
     LEXIS 25692 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 84, 120 S. Ct. 631,
     145 L. Ed. 2d 522 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Klimik v. Kent Co. Sheriff's Dep't*, 91 Fed. Appx. 396 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . 11

*Lownsberry v. Lees*, No. 06-cv-13602, 2008 U.S. Dist. LEXIS 115368 (E.D. Mich. 2008),
     *adopted* 2008 U.S. Dist. LEXIS 90959 (E.D. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Monell v. Department of Social Svcs.*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Morrison v. Board of Educ. of Boyd Co.*, 521 F.3d 602 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . 4

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Raymon v. Alvord Indep. Sch. Dist.*, 639 F.2d 257 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reichert v. Draud*, 511 F. Supp. 679 (E.D. Ky., 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Scarbrough v. Morgan Co. Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 9

*Schaill v. Tippecanoe Co. Sch. Corp.*, 679 F. Supp. 833 (N.D. Ind. 1988), *aff'd*
     864 F.2d 1309 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thelma D. v. Board of Educ. of the City of St. Louis*, 934 F.2d 929 (8th Cir. 1991) . . . . . . . 13, 14

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503 (1969) . . . . . . . . . . . . . . . . . . . . . 6

*Toronyi v. Barrington Comm. Unit Sch. Dist. 220*, No. 03-C-3949, 2005 U.S. Dist.
    LEXIS 3065 (E.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d
    1060 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wood v. Strickland*, 420 U.S. 308 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Zelnik v. Fashion Institute of Tech.*, 464 F.3d 217 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 5

## Statutes

MICH. COMP. LAWS § 380.1299 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MICH. COMP. LAWS § 380.1309 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

20 U.S.C. § 4071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12, 13, 17

THRUN
LAW FIRM, P.C.

## STATEMENT OF QUESTIONS PRESENTED

1. Should the School District be granted summary judgment of Plaintiff Drake Glowacki's unsupported claim that his free speech rights have been "chilled?"

2. Does the *de minimis* nature of the allege free speech violation require summary judgment of Plaintiff Daniel Glowacki's First Amendment claim?

3. Do the teacher's constitutionally rational actions require summary judgment of Plaintiff Daniel Glowacki's equal protection claim?

4. Should the School District be granted summary judgment because it cannot be held liable pursuant to 42 U.S.C. § 1983 under Plaintiffs' "failure to train" theory?

## STATEMENT OF FACTS

### I.      PARTIES

Plaintiff Daniel Glowacki (the "Student") is a former Howell Public Schools student, having graduated in June 2012.  He was enrolled in Defendant Jay McDowell's economics class the first semester of the 2010-2011 school year.  Plaintiff Drake Glowacki, his younger brother, attends the Howell Public Schools, and files this case through Sandra Glowacki, his next friend.  Daniel Glowacki had his 18th birthday while this case was pending.

### II.      OPERATIVE FACTS

Plaintiffs' experts emphatically agree that bullying based upon sexual orientation in public schools is entirely unacceptable.  (Exh. 1, Jeynes Dep., pp. 114-116; See also Exh. 2, Guernsey Dep., pp. 44-45).  The Superintendent of the Howell Public Schools ("School District") agrees, finding it beyond controversy that bullying based upon sexual orientation should be prohibited in the schools. (Exh. 3, Wilson Dep., pp. 28–30).  This sentiment was shared by a School District student club, which publicized "Anti-Bullying Day," which was designated by third parties as falling on October 20, 2010.  (Exh. 4, Moran Dep., p. 48-49).

Although the School District did not observe Anti-Bullying Day, the Howell High School Gay-Straight Association ("GSA"), a student organization, posted flyers which urged students to wear purple t-shirts on October 20th to mark the day.[1]  (*Id.* at 50-52).  Those fliers were approved by the principal and the GSA was permitted to post them in the school.  (*Id.* at 54-55).

---

[1]The federal Equal Access Act requires school districts to allow any noncurriculum-related student groups to meet on school premises during non-instructional time without discriminating against the content of the group's speech. 20 U.S.C. § 4071. An analogous state statute is found at Section 1299 of the Michigan Revised School Code, MICH. COMP. LAWS § 380.1299.

Ms. Wendy Hiller, a high school teacher with no administrative responsibilities, personally and independently printed her own purple t-shirts. Having been moved by the well-publicized September 22, 2010 suicide of Tyler Clementi, a college student who was bullied due to his sexual orientation (See Exh. 5), Ms. Hiller printed purple t-shirts stating "Tyler's Army" on the front and "Fighting Evil with Kindness" on the back. (Exh. 6, Hiller Dep., pp. 9-15). She sold approximately ten shirts at cost to Howell High School students and staff who asked for one, including Defendant Jay McDowell. (*Id*. at 14). As the shirts were intended only to make a statement against bullying, Ms. Hiller considered them no more controversial than "puppies and rainbows." (*Id*. at 15).

Mr. McDowell wore his purple t-shirt to school on October 20, 2010. (Exh. 7, McDowell Dep., pp. 145-149). He began each of his classes that day by showing a short anti-bullying video, coincidentally involving an individual who had at one time been bullied due to his sexual preference. (*Id*. at 143-144). He never had the chance to do so for his sixth hour economics class, however, due to the events now at issue in this case. (*Id*.).

On that day, Plaintiff Daniel Glowacki (the "Student") entered Mr. McDowell's sixth hour class to overhear him directing a female student to remove a Confederate flag belt buckle because he considered it a symbol of racism. (Exh. 8, Daniel Glowacki Dep., pp. 58-59; Exh. 7, McDowell Dep., pp. 148-150). The Student questioned Mr. McDowell's directive in the opening minutes of class, questioning why that symbol could not be worn while purple shirts, which he considered pro-gay, were permitted. (Exh. 7, pp. 154-156). As the conversation developed, the Student stated he did not "accept" gays due to his Catholic faith. (Exh. 7, *supra*; Exh. 8, pp. 76-77).

Mr. McDowell construed the Student's statement as bullying hate speech, and removed the Student from his class. (Exh. 7, pp. 178-186).[2] Another student who concurred in the Student's opinion without stating a religious justification was similarly removed. (Exh. 7, *supra*; Exh. 8, p. 59). They missed roughly 35 minutes of class time. (Exh. 7, p. 188).

Mr. McDowell found the Student's statement regarding his lack of "acceptance" of gays to be inherently disruptive and harmful to any gay students who may have been in attendance. Significantly, he did not find either the Student's asserted lack of "acceptance," or his underlying assertion of religious belief, sufficient to render the statement permissible. (Exh. 7, p. 178). The record is further devoid of evidence that the Student expressed himself in an inherently disrespectful manner.

The incident quickly became known to School District administrators. The involved assistant principals decided not to punish the Student. (Exh. 4, pp. 27-28; Exh. 16, Sharp Dep., pp. 27-28). The Student further was allowed to enroll in another teacher's economics class. (Exh. 8, Daniel Glowacki's Dep., p. 12). Any proposed disciplinary action was therefore never taken.

Upon further investigation of the incident, the School District concluded that Mr. McDowell impermissibly departed from the curriculum, and equally impermissibly disciplined a student for respectfully stating a religiously-based viewpoint during a teacher-prompted class discussion. (Exh. 9). Mr. McDowell received a one day paid suspension, and was directed to attend training in student speech rights. (*Id.*).

---

[2]Although teacher-initiated student classroom removal is a time-honored disciplinary technique, Section 1309 of the Michigan Revised School Code, MICH. COMP. LAWS § 380.1309, constitutes direct legislative authority to teachers to do so, pursuant to the terms of a legislatively-mandated local policy in that regard. (Exh. 10).

Mr. McDowell, a tenured teacher who to that point had a clean disciplinary record (Exh. 11, ¶ 2), grieved the action taken against him. Ultimately, the unpaid suspension was reduced to a written reprimand. (Exh. 12). The District's directive to attend training remained intact.

Plaintiffs filed this lawsuit in December 2011, claiming violation of the Student's free speech and equal protection rights. His younger brother, Drake, claims his brother's experiences unconstitutionally chilled his expressive rights. The School District now moves for summary judgment.

## ARGUMENT

**I.     THE SCHOOL DISTRICT IS ENTITLED TO SUMMARY JUDGMENT OF PLAINTIFF DRAKE GLOWACKI'S UNSUPPORTED CLAIM THAT HIS FREE SPEECH RIGHTS HAVE BEEN "CHILLED".**

The School District should be granted summary judgment of Plaintiff Drake Glowacki's factually frivolous claim that his older brother's experiences unconstitutionally chilled his right to free expression. (Complaint, ¶¶ 69-71). Such an alleged "chill" is an injury-in-fact sufficient to confer standing only when a litigant either demonstrates "objective harm or a threat of specific future harm." *Morrison v. Board of Educ. of Boyd Co.*, 521 F.3d 602, 608 (6th Cir. 2008). Where a First Amendment plaintiff "only alleges inhibition of speech, the federal courts routinely hold that no standing exists." *Id*. at 610. Additionally, where an individual chills their own speech based on their perception they would be disciplined for it, no standing exists. *Id*.

Drake Glowacki's claims are utterly factually baseless. Drake has never commented regarding his religion in class. (Exh. 13, Drake Glowacki Dep, p. 8). Moreover, in his experience, homosexuality in any context was never discussed in school. (*Id*. at 11). Finally, he admittedly was not inhibited from doing or saying anything at school based on what happened to his brother. (*Id*).

In short, the incident at issue had no material effect upon him. The School District is accordingly entitled to summary judgment of his frivolous "chill" claim.

## II. THE SCHOOL DISTRICT SHOULD BE GRANTED SUMMARY JUDGMENT OF THE STUDENT'S FIRST AMENDMENT CLAIM DUE TO THE *DE MINIMIS* VIOLATION ALLEGED.

The Court should grant the School District summary judgment of the Student's trivial alleged violations of free speech rights. Since the Student claims he was disciplined due to his speech, he has asserted a claim of retaliation in violation of the First Amendment. (Complaint, ¶ 69). The elements of that claim are that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010). Those elements universally apply to such claims. See *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (inmate speech), *Henley v. Tullahoma City Sch. System*, 84 Fed. Appx. 534, 2003 U.S. App. LEXIS 25692 (6th Cir. 2003) (retaliation by public school officials against students due to parental speech).

To be constitutionally significant, an adverse action must "deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X, supra*, 175 F.3d at 396. The Sixth Circuit noted that "it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . .." *Id*. at 397, quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

An adverse action must objectively be more than *de minimis* to support a First Amendment retaliation claim. *Zelnik v. Fashion Institute of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006). With respect to student issues, the "*de minimis*" test must be applied "in light of the special characteristics

-5-

of the school environment." *Id.*, quoting *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1969).

Although public education is unquestionably an essential governmental function subject to constitutional constraints, absent application of the *de minimis* standard almost unlimited federal judicial review of local school district decisions would result. In *Reichert v. Draud*, 511 F. Supp. 679 (E.D. Ky., 1981), which concerned a teacher's unsuccessful First Amendment retaliation claim challenging class schedule changes, the court noted:

> The administrators of a school system make a host of decisions, directly or indirectly affecting personnel, ranging from the dismissal of a teacher on charges or moral turpitude to permitting him or her to hold a bake sale in the cafeteria to promote an extracurricular activity. Some examples of such decisions gleaned at random from the minutes of the Ludlow Board of Education introduced into evidence in this case are: to permit the boosters to have a walk-a-thon and to sell ballpoint pens, to allow a civic organization to use the cafeteria for a meeting; to establish higher academic qualifications for eligibility to be a cheerleader than to be a pantherette or an athlete; to prevent certain administrators to detain students 45 minutes for disciplinary detention, to adopt certain textbooks; to permit the 4-H Club to use the home economics room; to establish a program for gifted students; to allow students in the choir a full credit for their participation in that activity.

> Unless some practicable threshold test is devised, it is not inconceivable that a federal court action could be brought to challenge each and every one of these actions, if an invidious underlying motive for it were claimed. With regard to the plaintiff in the instant case, the minutes show that on one occasion, she was denied the privilege of going on a trip with the speech team. Could she have sued on this decision alone?

*Id.* at 685 (footnotes omitted).

The federal courts' reluctance to intervene in the business of local public schools extends to student disciplinary decisions. In a student discipline case, the United States Supreme Court ruled, "It is not the role of the federal courts to set aside decisions of school administrators which the Court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975). It is therefore not typically the role of federal courts "to set aside decisions of school

administrators . . .." *Schaill v. Tippecanoe Co. Sch. Corp.*, 679 F. Supp. 833, 855 (N.D. Ind. 1988), *aff'd* 864 F.2d 1309 (7th Cir. 1988).

Placing a First Amendment gloss over trivial student discipline cannot overcome the federal courts' reluctance to intervene in such matters. In *Raymon v. Alvord Indep. Sch. Dist.*, 639 F.2d 257, 258 (5th Cir. 1981), the court found a high school student's claim under 42 U.S.C. § 1983, in which she sought relief for a three point grade reduction, too insubstantial to confer federal jurisdiction. In *Toronyi v. Barrington Comm. Unit Sch. Dist. 220*, No. 03-C-3949, 2005 U.S. Dist. LEXIS 3065 (E.D. Ill. 2005), the mother of an elementary school student claimed First Amendment retaliation because the school district allegedly retaliated against her speech by holding her child with peers for 20-30 minutes at the end of the school day. *Id.* at *15. *Id.* The court concluded that, "as a matter of law, such minor inconvenience is not actionable." Finally, in *Lownsberry v. Lees*, No. 06-cv-13602, 2008 U.S. Dist. LEXIS 115368 (E.D. Mich. 2008), *adopted* 2008 U.S. Dist. LEXIS 90959 (E.D. Mich. 2008), the court held that allegedly retaliating against a preschool student by denying him the "opportunity to participate in a field trip, recess, play, or touching other students" was *de minimis* action insufficient to support a First Amendment retaliation claim. *Id.* at *15.

Plaintiffs in this case seek to subject to constitutional scrutiny one of the most common and trivial school disciplinary actions – a teacher's removal of a student from the classroom for roughly 35 minutes. Moreover, the District remedied this short-term removal to the fullest extent possible by placing the student in another economics class, and disciplining the teacher. The Student's actions were thus vindicated by the District's prompt actions. He therefore could not have objectively been deterred from further similar speech.

The Student further admittedly had no desire to speak at school concerning the issue of homosexuality and his religious faith. Those issues never arose in school before or after the incident

at issue. (*Id.* at 71-72). He did, however, make a video regarding the incident for the Marriage Anti-Defamation Alliance, which that organization posted on You Tube. (*Id.* at 36-37). That video was made before he graduated from Howell High School, and after the lawsuit was filed. (*Id.* at 78-79). Interestingly, the Student felt free to talk to his friends at school about it. (*Id.* at 80).[3]  If anything, the incident stimulated the Student's speech.

Based upon the foregoing, the Court should find, as a matter of law, that the rescinded student discipline is not of constitutional stature.  The *de minimis* nature of that penalty alone subjects the Student's First Amendment retaliation claim to summary judgment.

## III.   THE COURT SHOULD GRANT THE SCHOOL DISTRICT SUMMARY JUDGMENT OF THE STUDENT'S EQUAL PROTECTION CLAIM, SINCE THE TEACHER ACTED IN A CONSTITUTIONALLY RATIONAL FASHION.

The School District should be granted summary judgment of the Student's equal protection claim, because Mr. McDowell acted in a constitutionally rational fashion.  The Equal Protection Clause "protects against invidious discrimination among similarly situated individuals or implicating fundamental rights." *Miller v. City of Cincinnati*, 622 F.3d 524, 538 (6th Cir. 2010).  The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by the government decision-makers." *Id.* at 538.

Equal protection cases may be "brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  This

---

[3]The video is in the public domain, and is available at www.youtube.com/watch?v=VBzvtRbI huQ and www.marriageada.org/daniel-glowacki/.

THRUN
LAW FIRM, P.C.

advances the Equal Protection Clause's purpose of securing individual protection against discriminatory conduct. *Id.*

"Class of one" equal protection claims involving fundamental rights are subject only to rational basis review. *Scarbrough v. Morgan Co. Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006). In *Scarbrough*, a school district "director" (*i.e.*, superintendent) faced reappointment by the district's board of education following the expiration of his term of office. Four to five months before his reappointment date, the plaintiff, Scarbrough, agreed to say a prayer at a convention breakfast hosted by a local church, but later declined due to a scheduling conflict. *Id.* at 253. Shortly thereafter, a local newspaper published an article incorrectly announcing that he would be speaking at the church, further noting that its congregation was predominately gay and lesbian. *Id.* at 254. In response to that inaccurate article, Scarbrough provided written statements to two local newspapers explaining that he had declined the speaking engagement, did not "endorse, uphold, or understand homosexuality, but that he would not refuse to associate with gay people or refuse the opportunity to share with them his beliefs." *Id.* at 254.

Those statements caused some school district residents concern about the Scarbrough's fitness for the director position, and five district board members became concerned he was "putting the school's 'stamp of approval' on homosexuality as an acceptable alternative lifestyle." *Id.* Ultimately, Scarbrough was rejected for the position and sued the district.

Although finding that Scarbrough had adequately alleged deprivation of his fundamental First Amendment right to freedom of association, the court applied only rational basis review to the his equal protection claims. The court reasoned:

> While we recognize that some equal protection claims involve a "class of one," see *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000), we decline to extend the fundamental rights analysis to classes of one. To so extend the fundamental rights analysis would allow the Equal Protection

Clause to render other constitutional provisions superfluous. In this case, Scarbrough's right to associate is adequately protected by the First Amendment. In other cases, fundamental rights are protected by the substantive components of the Due Process Clause.

*Id.* at 261.

Plaintiff's equal protection claim in the present case involves only a "class of one" claim implicating fundamental speech and religion rights. His allegations state, in relevant part that:

79. By favoring speech that promotes and approves of homosexuality and punishing plaintiff's less favored religious view toward homosexuality, defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

80. Defendants' "harassment speech" policy was selectively enforced against Plaintiff DKG on account of his religious viewpoint on homosexuality in violation of the Equal Protection Clause of the Fourteenth Amendment.

81. Defendants' "harassment speech" policy as applied against Plaintiff DKG's religious speech on or about October 20, 2010, violates the Equal Protection Clause of the Fourteenth Amendment.

(Complaint, ¶¶ 79-81).

Simply stated, Plaintiff has done nothing more than place an equal protection gloss upon his First Amendment retaliation claim. As this claim arises in a "class of one" context, rational basis review must apply.

Mr. McDowell's actions pass rational basis review. In *Warren v. City of Athens*, 411 F.3d 697, 710-711 (6th Cir. 2005), the court explained that:

The "rational basis" test means that courts will not overturn government actions "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 84, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) (internal quotation marks and citation omitted).

A "class of one" plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by "negativing every conceivable basis which might support" the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Klimik v. Kent Co. Sheriff's Dep't*, 91

-10-

F.E.D. Appx. 396, 400 (6th Cir. 2004) (citations omitted); *Bauer v. Village of Mt. Sterling*, 44 F.E.D. Appx. 670, 677-78 (6th Cir. 2002).

The admitted facts in the present case reveal that Mr. McDowell was motivated not by anti-religious animus, but rather by a legitimate but poorly executed effort to stop what he believed were disruptive, intolerant, and bullying remarks. The Student testified that at the conclusion of his discussion with Mr. McDowell he was told, "If I was really against gays, I could leave his classroom." (Exh. 8, p. 62). At that point, another student raised his hand and, without reference to religious beliefs asked, "Can I leave too?" (*Id.* at 64). That student was removed from class as well. Moments later, the Student testified that Mr. McDowell told him he "was a racist and a bigot," was "getting suspended for bullying," and that he "was not allowed back in his classroom." (*Id.* at 65). Mr. McDowell thus removed all students who arguably expressed anti-gay sentiment, regardless of whether that sentiment was linked to expressions of religious faith. (Exh. 7, p. 157).

The School District's Student Conduct Policy states, in relevant part, that "Respect for the rights of others, consideration of their privileges, and cooperative citizenship shall . . . be expected of all members of the school community." (Exh. 14). Such respect includes "exemplary personal standards of courtesy, decency, and honesty." *Id.* Although in many ways flawed, Mr. McDowell's actions rationally promoted this legitimate governmental purpose. Under the minimal constitutional scrutiny to be applied to McDowell's actions, the Student's equal protection rights were not actionably violated as a matter of law. The District should therefore be granted summary judgment of that claim.

IV.   **ALTERNATIVELY, THE SCHOOL DISTRICT SHOULD BE GRANTED SUMMARY JUDGMENT BECAUSE IT CANNOT BE HELD LIABLE UNDER PLAINTIFFS' "FAILURE TO TRAIN" THEORY.**

Plaintiff's "failure to train" theory is unsupportable, and cannot be applied to secure School District liability for Mr. McDowell's alleged constitutional torts.[4]   As this Court knows, municipalities such as the School District cannot be held liable under the doctrine of *respondeat superior* in actions brought under 42 U.S.C. § 1983. *Monell v. Department of Social Svcs.*, 436 U.S. 658, 692 (1978). Rather, a municipality can be held liable only for those acts which may fairly be said to be its own. *Id.* at 694. Specifically, "the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with a requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). (Emphasis in original).

In order to state a claim against a municipality under Section 1983, a plaintiff must accordingly show that his injury was caused by an unconstitutional municipal "policy" or "custom." See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Where identified policies are facially valid, a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Brown, supra*, 520 U.S. at 407. Indeed, "deliberate indifference" requires "proof that a municipal actor disregarded a known or obvious consequence of his action," rendering the risk of a constitutional violation "plainly obvious." *Id.* at 409, 414.

---

[4]As the School District disciplined the teacher and has no policies which can reasonably be asserted to be facially unconstitutional, failure to train is the sole basis upon which Plaintiff seeks to secure School District liability under Section 1983. (Complaint, ¶¶ 12, 16, 71, 83).

Failure to train or supervise may sometimes be adequate proof of an unlawful policy or custom. *Ellis v. Cleveland Municipal Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). The elements of such a claim are: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Id.*

For purposes of summary judgment, the dispositive inquiry necessarily focuses upon the second prong of this test. "Deliberate indifference" may be proven by (1) failure to provide adequate training in light of foreseeable consequences that could result from lack of instruction; and (2) failure to act in response to repeated complaints. *Id.* at 700-701. For clarity's sake, each prong of this test will be addressed separately.

### A.   <u>Failure to Adequately Train</u>

The School District's effort to address student religious speech issues by policy was more than constitutionally adequate. In that regard, *Thelma D. v. Board of Educ. of the City of St. Louis*, 934 F.2d 929 (8th Cir. 1991), is instructive. In *Thelma D.*, six students were allegedly molested by a public school teacher, resulting in a Section 1983 action against the board of education for, among other things, failing to train employees regarding sexual abuse complaints. *Id.* at 930-31. With respect to the board's liability for "deliberate indifference" in failing to train a principal appropriately, the court reasoned:

> [T]he record clearly indicates that the Board has developed and implemented policies and procedures for handling complaints of sexual abuse. Under Board policy, school principals receiving complaints of sexual abuse are directed to conduct an immediate investigation into the matter. If a principal determines that a complaint has some basis, Board policy directs the principal to forward the complaint to the Missouri Division of Family Services for further investigation. The Board has implemented various programs to instruct principals on the reporting laws and procedures, and to train school employees in detecting and investigating incidents of child abuse.

*Id.* at 934.

-13-

The court was similarly unconcerned about the principal's claim that he had never received training, stating that the "absence of training in any particular case . . . may arise merely from the possible negligent administration of an otherwise sound program." *Id.* at 935, citing *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Significantly, unlike the unique instance which arose in the present case, personnel in *Thelma D., supra*, were *repeatedly* required to investigate child abuse complaints and make "a determination as to whether they merit further attention from the Missouri Division of Family Services and higher level school officials." *Id.* at 935. Individuals there were accordingly charged with implementing an investigatory procedure multiple times, not simply making a determination as to the constitutional significance of single spontaneous student utterance, as is the case in the present matter.

"Deliberate indifference" therefore is ordinarily found where employees lack training to meet common, recurring circumstances. In *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), a case involving alleged failure to train police officers regarding use of excessive force, the Supreme Court reasoned that:

> [T]he focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will alone not suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equipt him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, it yet not condemn the adequacy of the program to enable officers to respond properly *to the usual and recurring situations with which they must deal*.

(Emphasis added; internal citations omitted). Indeed, basing a municipality's liability upon an analysis of what it "could have done" to further train employees would result both in "*de facto*

-14-

*respondeat superior* liability on municipalities" and "an endless exercise of second-guessing municipal employee-training programs." *Id.* at 391-332.

The constitutional training requirement thus declines in direct proportion to the frequency the task at issue is performed. On one end of the spectrum, the United States Supreme Court in *City of Canton, supra,* found it a "moral certainty" that armed police officers would require proper training in use of deadly force to apprehend fleeing felons. 489 U.S. at 390, n. 10. At the other end of the spectrum, in a case analogous to the present matter, a court determined no training was constitutionally required. *Currie v. School Dist. of the City of Saginaw,* 452 F. Supp. 2d 723 (E.D. Mich. 2006), *aff'd* 513 F.3d 570 (6th Cir. 2008), *cert. denied* 555 U.S. 1069 (2008).

In *Currie,* fifth grade public school students were assigned to create, market, and sell a product at school, using school-issued "currency." 452 F. Supp. 2d at 727. A student decided to make pipe cleaner candy canes, with an attached card conveying a sectarian religious message. *Id.* at 728. Following review by school officials, the principal informed the student's family that he would not be permitted to sell the product with the attached card in school, but could do so in the parking lot after school. He nevertheless received a "A" for the assignment, and was not disciplined. *Id.* at 730. A multi-count constitutional lawsuit followed. *Id.* The plaintiffs attempted to secure liability against the school district by asserting that the district failed to train its teachers and principal on "dealing with religious issues that might arise during the instructional day." *Id.* at 731.

Despite admitted lack of a controlling policy or training, the court declined to find the school district acted deliberately indifferently. The court reasoned:

> Nor have the plaintiffs presented any evidence that the need for training was so obvious that the failure to train would result in a constitutional violation. There is no evidence from which the Court or a jury could conclude that it was inherently foreseeable that teachers would violate the speech or religious rights of students or that specific training was necessary to avoid the deprivation of constitutional rights. Although the absence of prior complaints addresses a different aspect of the failure-

to-train proofs, that fact also has a bearing on the inherent foreseeability of the issues that might arise in the classroom. The point, of course, is that the lack of prior incidents reinforces the conclusion that a reasonable administrator cannot be found to have been deliberately indifferent to the need to train for unlikely happenings. Although a training program of the type the plaintiffs advocate may help school administrators in their tasks, there is no basis for school board liability based on the sole fact that no training existed.

*Id.* at 732-733.

The School District in the present case went well beyond the steps taken by the district in

*Currie, supra.* Initially, the School District addressed the issue presented by policy. (Exh. 15). This

policy states in relevant part that:

> The Establishment Clause of the First Amendment does not prohibit purely private religious speech by students. Students have the same right to engage in individual or group prayer and religious discussion during the school day as they do to engage in other comparable activity. * * * Local school authorities possess substantial discretion to impose rules of order and other pedagogical restrictions on student activities, but they may not structure or administer such rules to discriminate against religious activity or speech.

* * *

> **Student Assignments:** Students may express their beliefs about religion in the form of . . . oral assignments free of discrimination based on the religious content of their submissions. Such . . . classroom work should be judged by ordinary academic standards of substance and relevance, and against other legitimate pedagogical concerns identified by the school.

*Id.*

Since teachers are highly educated professionals, the School District considers them

responsible for, and capable of, implementing its classroom-related policies. (Exh. 3, Wilson Dep.

p. 24, 27-28). Significantly, both of Plaintiff's education experts, Dr. William Jeynes and Dr. Daniel

Guernsey, agree that it is a teacher's responsibility to become familiar with and apply policies

applicable to classroom practices. (Exh. 1, Jeynes Dep., p. 100; Exh. 2, Guernsey Dep., pp. 50-51).

The employer training which reasonably must be provided to teachers regarding their classroom

duties therefore differs considerably from deadly force training which must be provided to police officers, which as a group have less formal education and are more likely to be required to make spur-of-the-moment life and death decisions than teachers.

Most importantly, however, no prior issues regarding inappropriate teacher reaction to a student's stated religious beliefs or viewpoints occurring during class arose in the School District. (Exh. 11, Wilson Aff., ¶ 5). After the incident at issue, however, Mr. McDowell was required by the District to attend individual training concerning student free speech rights. (Exh. 3, Wilson Dep., p 58; Exh. 9). Additionally, all teachers received such training in February 2011. (Exh. 3, p. 58-59).

The School District accordingly addressed by the policy the appropriate means of handling student religious speech. The District was not constitutionally required, however, to proactively train teachers to avoid a previously non-existent problem. When the problem actually arose, however, the offending employee received training to ensure that it would not recur.

Based upon the case precedent discussed above, this behavior does not approach the "deliberate indifference" required to secure municipal liability under 42 U.S.C. § 1983. The District is accordingly entitled to summary judgment of Plaintiff's claims.

### B.     Failure to Act in Response to Repeated Complaints

No evidence exists that the School District was deliberately indifferent to a problem of allegedly unconstitutional suppression of student religious speech. In *Thomas v. City of Chattanooga*, 398 F.3d 426, 431 (6th Cir. 2005), the Sixth Circuit held that evidence of 45 instances of use of excessive police force did not show a custom of condoning such violations, because no data was introduced showing a "normal" incidence of excessive force complaints. In *Ellis v. Cleveland Municipal Sch. Dist., supra*, the court held that ten reports of alleged impermissible corporal punishment, two of which arguably rose to the level of child abuse, was insufficient as a matter of

-17-

law to show that the school district had notice of a problem requiring additional training or supervision. 455 F.3d at 701.

In the present case, the School District received *no* complaints that student religious speech was being unconstitutionally suppressed before the incident underlying the current litigation. (Exh. 11, Wilson Aff., ¶ 5). As failure to proactivly train professional staff to avoid a non-existent problem cannot rise to the level of constitutional "deliberate indifference" as a matter of law, the School District should be granted summary judgment.

## CONCLUSION

For the reasons stated, Defendant Howell Public Schools respectfully requests that this Court enter summary judgment in its favor. The School District further requests an award of costs and reasonable attorney fees.

Respectfully submitted,

THRUN LAW FIRM, P.C.
Attorneys for Defendant Howell Public
School District

Dated: November 15, 2012

 /s/ Roy H. Henley
Roy H. Henley (P39921)
2900 West Road
P.O. Box 2575
East Lansing, Michigan 48826-2575
Telephone: (517) 484-8000
rhenley@thrunlaw.com

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 15, 2012.

s/Carrie L. Watts
CARRIE L. WATTS

-19-