Page 1

IN THE UNITED STATES DISTRCT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G and D.C.G.,

        Plaintiffs,

CASE NO. 11-cv-154891

vs

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON "JAY" MCDOWELL, individually
and in his official capacity as a teacher
in the Howell Public School District,

        Defendants.
_____/

    The Deposition of DANIEL GUERNSEY, taken before me, Jennifer Wall, CSR-4183, a Notary Public within and for the County of Oakland, Acting in Washtenaw, State of Michigan, at 24 Frank Lloyd Wright Drive, Ann Arbor, Michigan on Friday, October 12, 2012.

APPEARANCES:

    ERIN ELIZABETH MERSINO, ESQ.
    The Thomas More Law Center
    24 Frank Lloyd Wright Drive
    Ann Arbor, Michigan 48106
    (734) 827-2001

        Appearing on behalf of Plaintiff.

EXHIBIT 2

Page 44

1    question in the deposition, no. Do you think gays
2    should be bullied, no. I just don't think two men
3    should be married or I don't think that the -- he in
4    his fumbling way was getting to the Catholic truth,
5    that human sexual behavior belongs in the context of a
6    marriage between a man and woman, period. He got to
7    that in his fumbling way.
8            I can say that clearly to you. He couldn't
9    get there, but he did get there on your questioning.
10   And Jay did not go through that pattern of questioning.
11   He shut him down.
12 Q. And again, questioning by the teacher aside, how was the
13   student's expressing fumbling? What about it? What's
14   fumbling?
15 A. When he says -- he clarifies this in his deposition when you
16   asked him. All you had to do was ask him.
17           Why did you say you were against gays, were
18   you trying to bully gays, no. I was trying to express
19   my faith tradition, and he didn't have the tools to do
20   it.
21           The teacher truly representing diversity and
22   truly wanting to help that student understand and come
23   to the fullness of the tradition, could have done that.
24   McNally (sic) didn't do it.
25           The Catholic tradition teaches clearly that

1      the bullying of homosexuals is wrong.  Clearly.
2              And if Mr. McNally (sic) had asked the young
3      man to tell me what your faith tradition is, go home
4      and write a paper on it tonight, the young man could
5      have found that out and said that it was antithetical
6      to Catholic teaching to bully gays, sinful to bully
7      gays.
8   Q. There is no question in my mind that Ms. Bartos is going to
9      have some follow-up questions on this, but my question right
10     now, was, you know, you're -- the teacher's actions aside,
11     in what respect was the expression fumbling by the student?
12  A. Because he wasn't able to articulate what was in his -- in
13     his reasoning.
14             In the deposition he articulated it.  I was
15     not trying to bully gays.  I don't believe in bullying
16     gays, I think bullying gays is wrong.  That's what he
17     said in his deposition under oath.
18             He would have said the same thing in the
19     classroom if the teacher had articulated and followed
20     the path of reasoning as would normally be expected in
21     a diverse professional environment.
22  Q. In the absence of the follow-up questioning that you would
23     have promoted from the teacher, do you believe the student's
24     initial expression could have been subject to
25     misunderstanding?

| | | |
|---|---|---|
| 1 | Q. | As head master at Donahue Academy, you have had experience |
| 2 | | with disciplining teachers, correct? |
| 3 | A. | Indeed. |
| 4 | Q. | And would it be fair to say that the purpose of teacher |
| 5 | | discipline is to correct a problem, or one of the primary |
| 6 | | purposes? |
| 7 | A. | Yes. |
| 8 | Q. | Did you review any personnel documents related to |
| 9 | | Mr. McDowell? |
| 10 | A. | No. |
| 11 | Q. | Do you know whether or not Mr. McDowell had any disciplinary |
| 12 | | history before this incident? |
| 13 | A. | No. |
| 14 | Q. | Do you know whether he had any disciplinary history after |
| 15 | | this incident? |
| 16 | A. | Other than what was in the exhibits, no. |
| 17 | Q. | Did you have an opportunity to review the teachers' |
| 18 | | collective bargaining agreement? |
| 19 | A. | No. |
| 20 | Q. | Are you familiar at all with the Michigan Teachers Tenure |
| 21 | | Act? |
| 22 | A. | Not substantially, no.  Not enough to form an opinion. |
| 23 | Q. | In Catholic schools, in your experience, in private and |
| 24 | | parochial education, do the boards of such schools typically |
| 25 | | issue policies? |

Page 51

1  A.  Yes.
2  Q.  Do some of those policies relate to classroom management?
3  A.  Classroom management is usually handled by the principal.
4      The board approves policies, so insofar as the board creates
5      or approves a policy related to classroom management, such
6      as there will be no corporal punishment, in that sense, yes,
7      the board would be involved.
8  Q.  At the Donahue academy, focusing the question a bit more,
9      has the board passed any policies which are applicable to
10     the classroom?
11 A.  The board approves the handbook which lists standards and
12     expectations for student behavior including in the
13     classroom, yes.  The board is aware of that and approves it.
14 Q.  And as head master at Donahue academy, do you expect your
15     teachers to be familiar with the handbook and those
16     standards?
17 A.  Absolutely.
18 Q.  You had mentioned that you had reviewed a number of school
19     district policies and guidelines, correct?
20 A.  The ones that I mentioned in the exhibits, yes.
21 Q.  Did you have any criticism of any of those policies and
22     guidelines?
23 A.  No.
24 Q.  Did you review any materials generated by Dr. Marcia McEvoy?
25 A.  I briefly looked at some of her presentations, yes.