# EXHIBIT 13

Page 1

IN THE UNITED STATES DISTRCT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G and D.C.G.,

   Plaintiffs,
        CASE NO. 11-cv-154891
vs

HOWELL PUBLIC SCHOOL DISTRICT,
JOHNSON "JAY" MCDOWELL, individually
and in his official capacity as a teacher
in the Howell Public School District,

   Defendants.
_____/

  The Deposition of DANIEL GUERNSEY, taken before me, Jennifer Wall, CSR-4183, a Notary Public within and for the County of Oakland, Acting in Washtenaw, State of Michigan, at 24 Frank Lloyd Wright Drive, Ann Arbor, Michigan on Friday, October 12, 2012.
APPEARANCES:
 ERIN ELIZABETH MERSINO, ESQ.
 The Thomas More Law Center
 24 Frank Lloyd Wright Drive
 Ann Arbor, Michigan 48106
 (734) 827-2001
  Appearing on behalf of Plaintiff.

Page 2

```
 1    APPEARANCES, CONTINUING:
 2
 3      SUZANNE P. BARTOS, ESQ.
        Plunkett Cooney
 4      535 Griswold, Suite 2400
        Detroit, Michigan 48226
 5      (313) 983-4741
 6        Appearing on behalf of Defendant McDowell.
 7
 8      ROY H. HENLEY, ESQ.
        Thrun Law Firm, PC
 9      2900 West Road, Suite 400
        East Lansing, Michigan 48826
10      (517) 484-8000
11        Appearing on behalf of Howell Public Schools.
12    ALSO PRESENT: Sandra Glowacki
                    Drake Glowacki
13                  Cassandra Harmon-Higgins
14
15            W I T N E S S   I N D E X
16    Witness        Examined by          Page
17    DANIEL GUERNSEY   Mr. Henley         3
18                      Ms. Bartos         54
19            E X H I B I T   I N D E X
20    Exhibit No.    Description           Page
21    Ex. No. 38     Report                4
22    *Ex. No. 39    Document              52
23    *(retained by counsel)
24
25             *  *  *  *  *
```

Page 3

```
 1    Ann Arbor, Michigan
 2    Friday, October 12, 2012
 3    10:10 a.m.
 4                    - - -
 5               DANIEL GUERNSEY
 6    was thereupon called as a witness herein, and after having been
 7    first duly sworn to tell the truth, the whole truth and nothing
 8    but the truth, was examined and testified as follows:
 9          MR. HENLEY: The record should reflect that
10    this is the discovery only deposition of Dr. Daniel Guernsey
11    to be taken for that purpose under the Federal Rules of
12    Civil Procedure and noticed by co-defendant, Jay McDowell.
13          Dr. Guernsey, my name is Roy Henley,
14    and I represent the Howell Public Schools in this case.
15    I will be starting the questioning with you.
16                 EXAMINATION
17    BY MR. HENLEY:
18    Q. Have you ever had your deposition taken before?
19    A. Yes.
20    Q. Okay. So you know to hopefully answer verbally as opposed
21       to a nod or a shake of the head or an uh-huh or an unh-unh.
22       Everyone forgets, I will remind you.
23    A. Yes.
24    Q. Additionally, if I ask a question that you don't understand
25       or if that is just plain unintelligible, please let me know
```

Page 4

```
 1       and I will rephrase it so you do understand.
 2          Also if you'd like to take a break at any
 3       time, I'm all in favor of breaks, please just let me
 4       know and I'd only ask that we clear up questions that
 5       are pending before we take a break, okay.
 6          To start with, could you state your name for
 7       the record, please, and spell your last name.
 8    A. Daniel Patrick Guernsey, G-u-e-r-n-s-e-y.
 9          MR. HENLEY: Just to make things go faster
10       I should probably should have done this, but let's mark this
11       as Exhibit No. 38.
12          (Deposition Exhibit No. 38, report, was marked
13           for identification.)
14          MR. HENLEY: Back on the record.
15    BY MR. HENLEY:
16    Q. Dr. Guernsey, let me hand you what's been marked as
17       Exhibit 38, and that is your report, correct?
18    A. Yes.
19    Q. And let's move back to Exhibit A of your report. That is
20       your curriculum vitae?
21    A. Yes, sir.
22    Q. Is there anything in your curriculum vitae which is
23       inaccurate or not up-to-date?
24    A. Not that I'm aware of.
25    Q. I'd like to start and talk a little bit about your
```

Page 49

1     October 25th written reprimand. I think there were two.
2 Q. Yes. The shorter one I think is the -- assuming -- well,
3     strike that.
4         Let me do things in better form.
5         Assuming that the shorter reprimand was the
6     reprimand that remained effective, would you have any
7     criticism in that regard?
8 A. Yes.
9 Q. What would that be?
10 A. It's inadequate, especially when compared with the reprimand
11    of October 25th by Moran and Moore, that, in my estimation,
12    is a more appropriate articulation of the severity of what
13    happened in that classroom towards the denial of Daniel's
14    rights.
15 Q. Were you aware that any disciplinary references were removed
16    from Daniel's record?
17 A. Yes.
18 Q. In what way do you consider the latter reprimand, the short
19    one, to be inadequate?
20 A. Mr. McDowell was guilty of unprofessional, unethical conduct
21    which deprived the student of his rights. His behavior in
22    the classroom, as I articulated in my report, was grossly
23    inadequate, and unfair and created a hostile environment,
24    not just for Daniel, but for the other student as they
25    articulated in their response to the incidents.

Page 50

1 Q. As head master at Donahue Academy, you have had experience
2    with disciplining teachers, correct?
3 A. Indeed.
4 Q. And would it be fair to say that the purpose of teacher
5    discipline is to correct a problem, or one of the primary
6    purposes?
7 A. Yes.
8 Q. Did you review any personnel documents related to
9    Mr. McDowell?
10 A. No.
11 Q. Do you know whether or not Mr. McDowell had any disciplinary
12    history before this incident?
13 A. No.
14 Q. Do you know whether he had any disciplinary history after
15    this incident?
16 A. Other than what was in the exhibits, no.
17 Q. Did you have an opportunity to review the teachers'
18    collective bargaining agreement?
19 A. No.
20 Q. Are you familiar at all with the Michigan Teachers Tenure
21    Act?
22 A. Not substantially, no. Not enough to form an opinion.
23 Q. In Catholic schools, in your experience, in private and
24    parochial education, do the boards of such schools typically
25    issue policies?

Page 51

1 A. Yes.
2 Q. Do some of those policies relate to classroom management?
3 A. Classroom management is usually handled by the principal.
4    The board approves policies, so insofar as the board creates
5    or approves a policy related to classroom management, such
6    as there will be no corporal punishment, in that sense, yes,
7    the board would be involved.
8 Q. At the Donahue academy, focusing the question a bit more,
9    has the board passed any policies which are applicable to
10    the classroom?
11 A. The board approves the handbook which lists standards and
12    expectations for student behavior including in the
13    classroom, yes. The board is aware of that and approves it.
14 Q. And as head master at Donahue academy, do you expect your
15    teachers to be familiar with the handbook and those
16    standards?
17 A. Absolutely.
18 Q. You had mentioned that you had reviewed a number of school
19    district policies and guidelines, correct?
20 A. The ones that I mentioned in the exhibits, yes.
21 Q. Did you have any criticism of any of those policies and
22    guidelines?
23 A. No.
24 Q. Did you review any materials generated by Dr. Marcia McEvoy?
25 A. I briefly looked at some of her presentations, yes.

Page 52

1 Q. Did you have any criticisms of presentations?
2 A. Not from what I saw.
3 Q. As part of your work on this case, did you review Michigan's
4    anti-bullying legislation?
5 A. No.
6 Q. Are you familiar with it at all?
7 A. No.
8 Q. Does Florida have anti-bullying legislation that you know
9    of?
10 A. I would imagine, but I do not specifically remember reading
11    it.
12 Q. Based on that, I assume that you have not run into issues as
13    head master with applications to any anti-bullying
14    legislation?
15 A. Not legislation, but bullying, absolutely.
16 Q. Bullying is bad?
17 A. Bullying is terrible.
18 Q. Are there any specific policies at Donahue Academy?
19 A. Yes. We prohibit bullying. We prohibit anything that works
20    contrary to the dignity of a human person.
21 Q. Have you done any studying at all or research regarding
22    anti-bullying mandates versus rights of free expression in
23    public classrooms?
24 A. No. I have done, you know, basic researching on bullying,
25    and what is bullying, how does it work, how can you prevent