IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

        Plaintiffs,

    v.

HOWELL PUBLIC SCHOOL DISTRICT, and
JOHNSON ("JAY") MCDOWELL, individually
and in his official capacity as a teacher in the
Howell Public School District,

        Defendants.

Case No. 2:11-cv-15481-PJD-DRG

PLAINTIFFS' RESPONSE TO
DEFENDANT HOWELL
PUBLIC SCHOOL'S
MOTION FOR SUMMARY
JUDGMENT

Hon. Patrick J. Duggan

Mag. Judge David R. Grand

THOMAS MORE LAW CENTER
Richard Thompson (P21410)
Erin Mersino, Esq. (P70886)
24 Frank Lloyd Wright Dr.
P.O. Box 393
Ann Arbor, MI 48106
emersino@thomasmore.org
(734) 827-2001

AMERICAN FREEDOM LAW CENTER
Robert J. Muise (P62849)
P.O. Box 131098
Ann Arbor, MI 48113
rmuise@americanfreedomlawcenter.org
(734) 635-3756
*Counsel for Plaintiffs*

THRUN LAW FIRM, P.C.
Roy Henley (P39921)
2900 West Road, Suite 400
P.O. Box 2575
East Lansing, MI 48826-2575
rhenley@thrunlaw.com
(517) 484-8000
*Counsel for Defendant Howell
Public School District*

PLUNKETT COONEY
Suzanne Bartos (P36490)
535 Griswold, Suite 2400
Detroit, MI 48226
sbartos@plunkettcooney.com
(313) 983-4741
*Counsel for Defendant Johnson
("Jay") McDowell*

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT HOWELL PUBLIC SCHOOL
DISTRICT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................................i

STATEMENT OF QUESTIONS PRESENTED ............................................................ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF REQUESTED ...............................................................................................................iii

INTRODUCTION ........................................................................................................1

COUNTER-STATEMENT OF FACTS........................................................................1

I.   OCTOBER 20, 2010, "ANTI-BULLYING/SPIRIT DAY"................................3

II.  DEFENDANTS RESTRICTED PLAINTIFFS' FREE SPEECH AND EQUAL PROTECTION OF THE LAW .........................................................................4

III. SCHOOL DISTRICT POLICY AND GUIDELINES AUTHORIZED THE SPEECH RESTRICTION AND THE VIOLATION OF EQUAL PROTECTION ........................10

IV.  DEFENDANT MCDOWELL'S MEDIA FRENZY ...........................................12

ARGUMENT  ..............................................................................................................12

I.   PLAINTIFFS' FIRST AMENDMENT CLAIMS ARE NOT DE MINIMIS IN NATURE ...........................................................................................................12

II.  DEFENDANT MCDOWELL VIOLATED PLAINTIFFS' CONSTITUTIONAL RIGHTS GUARANTEED TO THEM BY THE EQUAL PROTECTION CLAUSE .....14

III. THE SCHOOL DISTRICT HAS CHILLED PLAINTIFF D.C.G.'S RIGHT TO FREE SPEECH THEREFORE THE SCHOOL DISTRICT IS NOT ENTITLED TO SUMMARY JUDGMENT ON D.C.G.'S CLAIM .........................................................16

IV.  LIABILTIY MUST EXTEND TO THE SCHOOL DISTRICT .......................17

CONCLUSION ............................................................................................................20

CERTIFICATE OF SERVICE....................................................................................21

i

## STATEMENT OF QUESTIONS PRESENTED

I.   Whether the Plaintiffs' First Amendment claims are de minimis in nature when the claims involve at least a "loss of First Amendment freedoms, for even minimal periods of time"?  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

II.  Whether Defendant McDowell violated Plaintiffs' constitutional rights guaranteed to them by the Equal Protection clause?

III. Whether Plaintiff D.C.G. has standing to bring forth a claim when his right to free speech has been chilled?

IV. Whether liability extends to the actions of the School District when the Plaintiffs are challenging actions, policies, procedures, and customs of the School District?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF REQUESTED

*Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780 (2003)

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)

## INTRODUCTION

As the Supreme Court emphasized in a case *arising out of a public school context*, "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion. *W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). A student possesses constitutional rights on a public school campus—a conclusion that can only be changed by the Supreme Court. School officials must abide by the proscriptions set forth in the First Amendment—proscriptions that are not mere platitudes to be cast aside to avoid discomfort or discourse that might accompany differing viewpoints, even when that means allowing religious speech with the viewpoint that the act of homosexuality is unacceptable alongside speech supporting homosexuality.

## COUNTER-STATEMENT OF FACTS

This case is about a 16-year-old boy, Plaintiff D.K.G., and the unconstitutional acts of Defendant McDowell, the boy's Economics Teacher and the President of the Teacher's Union, who brashly threw the boy out of class after prying into the child's religious views, and ridiculing the child for being Catholic and following the Church's teachings in regard to homosexuality. *See* (Dep. of Daniel Glowacki at Page 32 at Ex. 1) ("Q. Do you have a belief on homosexuality? A. Yes. Q. What is your belief – A. It's against my religion. It's against my beliefs. Q. When you say it's against your religion, what do you mean it's against your religion? A. As I was raised, homosexuality is against my religion. I was raised that it is right for a male and a female to be married, not another male and another male. That's how I was raised.").

1

This case is **_NOT_** about bullying.  Defendant Howell Public School District asserts the bizarre notion that Plaintiffs' religious beliefs somehow equate bullying.  In stating "My religion does not accept gays," the Plaintiff D.K.G. was actually, however, responding to a direct question posed by his teacher Defendant McDowell about the Plaintiff's religious beliefs.  (Dep. of Daniel Glowacki at Page 76-77 at Ex. 1) ("Q. Do you remember what words you actually used?  A. 'My religion does not accept gays.'"); (Affidavit of Brandon Szuch at Ex. 2) (D.K.G. "said it was against his religion to be gay."); (Affidavit of Danielle Kollath at Ex. 3) (D.K.G. "said it was against his religion to accept gays.  Mr. McDowell said 'Your religion cannot say whether you like or dislike gays.'  I felt that Mr. McDowell was bashing religion."); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).

Plaintiff D.K.G. was then told to leave class for holding said religious beliefs in accordance with his Catholic faith.  (Dep. of Daniel Glowacki at Page 32 at Ex. 1); (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Guernsey at 58-64 at Ex. 13).  He did *not* bully any individual for being homosexual on October 20, 2010 nor has he ever bullied any one for being homosexual.  Plaintiff D.K.G. agrees that bullying is wrong.  (Dep. of Dr. Guernsey at 58-64 at Ex. 13)..  ***Plaintiff D.K.G. never stated that he "had anything actually against people who are gay," never used "any offensive language," never used "any derogatory terms to describe people who are gay," never made "any statements about disliking people who are gay," never made "any statements about treating people who are gay poorly because they were gay," and never made "any statements about wanting to do something to hurt anyone who was gay."***  (Dep. of Defendant McDowell at 157-8 at Ex. 6).

I.    OCTOBER 20, 2010, "ANTI-BULLYING/SPIRIT DAY"

On October 20, 2010, teachers and students of Howell High School celebrated what the Gay & Lesbian Alliance Against Defamation ("GLAAD") nationally advertised as "Spirit Day" and Howell High School's Gay Straight Alliance deemed "Anti-Bullying Day." (Dep. of Defendant McDowell at 117-28 at Ex. 6). The purpose of "Anti-Bullying/Spirit Day" was to support the gay, lesbian, bisexual, and transgender lifestyle ("LGBT") and to honor homosexual teenagers who recently committed suicide. (Dep. of Defendant McDowell at 117-28 at Ex. 6). The Principal of Howell High School had approved a flyer advertising the day, calling for teachers and students to wear purple in support of the LGBT lifestyle. (Dep. of Defendant McDowell at 117-28 at Ex. 1); (Dep. of Aaron Moran at 49-56 at Ex. 7). Defendant McDowell believed that the event was "okayed by the school." (Dep. of Defendant McDowell at 145 at Ex. 6). There may have been a rainbow flag sticker affixed to the door of his classroom, as such stickers had been placed on several doors throughout the high school. (Dep. of Defendant McDowell at 161 at Ex. 6).

A Howell High School teacher, Wendy Hiller, made a purple t-shirt with the silkscreened words "Tyler's Army." "Tyler's Army" referenced support for an 18-year-old homosexual named Tyler Clementi, whose college roommate videotaped him performing homosexual sex. This tragically drove Mr. Clementi end his own life. Hiller used the name "Tyler's Army" to reference "Dumbledore's Army," a character in the Harry Potter books rumored to be homosexual. (Dep. of Wendy Hiller at 13 at Ex. 8); (Dep. of Defedant McDowell at 119 at Ex. 7). Staff members of Howell High School, including Defendant McDowell, decided to wear the purple Tyler's Army t-shirts and discuss the "Anti-Bullying/Spirit Day" in class. (Dep. of Defendant McDowell at 117-28 at Ex. 7). On October 20, 2010, McDowell wore the purple

3

"Tyler's Army" t-shirt and began each of his classes by showing a video about homosexual teens committing suicide.   (http://www.gaypolitics.com/2010/10/13/out-fort-worth-city-councilman-tells-personal-bullying-story, last visited November 15, 2012).

On the previous day, the Superintendent of Howell Public Schools Ronald Wilson had received a parent complaint inquiring whether Howell High School was supporting a Gay Pride Rally.  (Dep. of Ronald Wilson at 35 at Ex. 9).  Wilson was informed that the Gay Straight Alliance called for students and teachers to wear purple on October 20th to stop homophobia. (Dep. of Ronald Wilson at 36 at Ex. 9).

## II.   DEFENDANTS RESTRICTED PLAINTIFFS' FREE SPEECH AND EQUAL PROTECTION OF THE LAW.

On October 20, 2010, Defendant McDowell began his 6th hour economic class wearing his purple "Tyler's Army" t-shirt.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).  Defendant McDowell first reprimanded a female student for wearing a confederate flag belt buckle in his class and had the student remove the belt buckle. (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).  Defendant McDowell then explained that October 20th was "Anti-Bullying/Spirit" Day and the students were going to watch a movie about Homosexual Teen Suicide and how homosexuals face discrimination.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5). Confused after Defendant McDowell asked the female student to remove her belt buckle, Plaintiff D.K.G. asked Defendant McDowell about the difference between Confederate Flags and symbols promoting gay rights, and why wearing a message promoting gay rights was acceptable

in the school but wearing a Confederate Flags belt buckle was not. (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5). Defendant McDowell responded by discussing that a symbol, such as the rainbow flag, symbolizes the gay community, but the confederate flag represents something to the effect of "killing people and hanging and skinning people alive." (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5). In front of the class, Defendant McDowell asked Plaintiff D.K.G. if he "supported gays." (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5). Plaintiff D.K.G. responded by saying that *his religion* did not accept gays. (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Dep. of Daniel Glowacki at Page 32, 76-77 at Ex. 1). Plaintiff D.K.G. is a Catholic who had been taught to strictly follow the Magisterium of the Catholic Church and its sexual teachings. (Compl. at ¶¶ 41-46). Plaintiff's faith teaches that homosexual acts are amoral, sinful, and contrary to natural law. (Compl. at ¶¶ 41-46); (Dep. of Dr. Guernsey at 58-64 at Ex. 13).

Defendant McDowell admitted that "I did get emotional at this time." (Dep. of Defendant McDowell Ex. 17 at Ex. 5). Defendant McDowell told Plaintiff D.K.G. that he could not express his religious belief on homosexuality in class and that "It doesn't matter if it is your religion, you can't say it in class." (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4). Defendant McDowell equated Plaintiff D.K.G.'s religious belief to racism, and not

accepting blacks.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell at 17 at Ex. 5); (Dep. of D.K.G. at 58-59 at Ex. 1); (Dep. of Defendant McDowell at183-4) (admitting that after ordering Plaintiff D.K.G. from class Defendant McDowell told Plaintiff D.K.G. "that what he said was inappropriate, that some people would compare it to racism, and that they couldn't come back in class").  Defendant McDowell told Plaintiff D.K.G. that if he really were Catholic, then he should attend a Catholic school.  (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of D.K.G. at 59 at Ex. 1).  Defendant McDowell then asked Plaintiff D.K.G. if he accepted gays, and Plaintiff D.K.G. answered that he did not based upon his religious beliefs.  (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Affidavit of Brandon Szuch at Ex. 2).  Defendant McDowell admits that he finds student speech acceptable supporting homosexuality, but finds *unacceptable* student speech that does not support homosexuality based upon *religious viewpoint*.  (Dep. of Defendant McDowell Ex. 103-7 at Ex. 6).  Acting in accordance with this viewpoint discrimination, Defendant McDowell, immediately and in a state of anger, threw Plaintiff D.K.G. "out of class and wrote up a referral for unacceptable behavior"—voicing religious beliefs that did not support or promote the rights of homosexuals. (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Affidavit of Brandon Szuch at Ex. 2).  A security guard heard McDowell slam the classroom door and yell at Plaintiff D.K.G. in the hall. (Affidavit of David DeVries at Ex. 10).  Plaintiff D.K.G., calmly and cooperatively, told the security guard that he had not done anything to merit being thrown out of class; Defendant McDowell was yelling and in a state of anger.  (Affidavit of David DeVries at Ex. 10).

When Defendant McDowell returned to his classroom, he engaged the class in a conversation about gay rights.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle

Kollath at Ex. 3).   Defendant McDowell showed his video discussing suicide amongst homosexual teenagers. (http://www.gaypolitics.com/2010/10/13/out-fort-worth-city-councilman-tells-personal-bullying-story, last visited November 15, 2012).   According to students in the class, Defendant McDowell made comments during the class that made his students "feel small" and were "attacking my religion and family."  (Affidavit of Danielle Kollath at Ex. 3).  Many students "felt uncomfortable in the classroom" and that Plaintiff D.K.G. "did nothing wrong" and only told Defendant McDowell that "it was against his religion to be gay."  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3).

After an investigation into Defendant McDowell's 6th hour Economic class, Howell Public Schools initially reprimanded Defendant McDowell finding, "Students' First Amendment Rights were violated. . . .You went on to discipline two students [one of the students being Plaintiff D.K.G.] who told you they do not accept gays due to their religion.  After failure of getting one student to recant, you engaged in an unsupported snap suspension, rather than allow the student his beliefs.  You not only missed an opportunity to model a mature and professional response, you modeled oppression and intolerance of student opinion.  You did this based on your own discomfort with their belief and how it related to a personal experience.  This could be construed as teacher-to-student bullying; ironic of the Anti-Bullying Day intent. . . . As a result of your behaviors, you will receive a one day suspension without pay, a written reprimand will be placed in your personnel file, and you are mandated to engage in training on First Amendment Rights. (Dep. of Defendant McDowell at Ex. 13 at Ex. 11).

However after the initial reprimand Defendant McDowell, the President of Howell's teacher's union, filed a grievance against the school and the school reversed its decision.   The school reinstated Defendant McDowell's lost pay and removed his one day suspension; the

school made training on First Amendment Rights mandatory for all Howell High School Teachers, and replaced the reprimand in Defendant McDowell's personnel file. *See* (Dep. of Ronald Wilson at 59 at Ex. 9) (" . . . given the incident that occurred on the 20[th] [of October, 2010] and then subsequent questions about, you know, how we should handle those types of situations, it seemed somewhat self-evident that we needed to go ahead and review this with our staff and make sure that we set some clear guidelines to ensure we don't have a repeat."). The new reprimand placed in McDowell's file was innocuous to his misdeeds when compared to the original reprimand; however, the replacement reprimand did state the following:

> You are receiving a written reprimand after an investigation into an incident when you slammed your door, raised your voice, and attempted to discipline students for their beliefs. . . . In addition, you loudly and angrily dismissed another student from the class for expressing an opinion which you deemed intolerant and unacceptable, an action which may have violated the student's right to free speech.

(Dep. of Defendant McDowell at Ex. 14 at Ex. 12); *see* (Dep. of Dr. Guernsey at 49 at Ex. 13) (describing replacement reprimand, "A. It's inadequate, especially when compared with the reprimand of October 25[th] by Moran and Moore, that, in my estimation, is a more appropriate articulation of the severity of what happened in that classroom towards the denial of [D.K.G.'s] rights. . . . Mr. McDowell was guilty of unprofessional, unethical conduct which deprived the student of his rights. His behavior in the classroom, as I articulated in my report, was grossly inadequate, and unfair and created a hostile environment, not just for [D.K.G.], but for the other student[s] as they articulated in their response to the incidents."); *see also* (Expert Report of Dr. Guernsey, Defense Ex. 38 at Ex. 14). On October 27, 2011, Plaintiff Sandra Glowacki requested that her son, D.K.G. be removed from McDowell's class, and the school honored the Plaintiff's request and placed D.K.G. in a different 6th hour Economics course. (Dep. of Aaron Moran at 63). Indeed, even the Principal of Howell High School disagreed with Defendant McDowell's

actions.  (Dep. of Aaron Moran at 45 at Ex. 7).  Defendant McDowell admitted himself that he wished Plaintiff D.K.G. simply would not express his religious viewpoint again.  (Dep. of Defendant McDowell at Ex. 18 at Ex. 18).  *Any other explanation for silencing Plaintiff D.K.G.'s speech* (for voicing religious views contrary to Defendant McDowell's position on homosexuality) should be recognized for what it is—*nothing more than subterfuge*.

Howell administrators allowed the disparate treatment of the Plaintiffs' religious views. The principal of Howell High School approved the syllabus, which barred statements deemed to be "homophobic" in Defendant McDowell's class, but offered no protection for religious viewpoints.  (Dep. of Defendant McDowell Ex. 15 at Ex. 15).  This syllabus was approved by the school principal with the knowledge that certain religions, such as Plaintiffs' Catholic religion, did not support the homosexual lifestyle.  *See* (Dep of Aaron Moran at 70 at Ex. 7) ("Q. And you are aware that some religions have views that the correct orientation, I guess, of sex would be for a man to be with a female?   A. Yes.   Q. And that some religions disapprove of the act of homosexual relations?   A. Yes.   Q. Are you familiar with the Catholic religion holding this view?   A.  Yes.").  Furthermore, the School District established training and set forth policies and guidelines enabling Defendant McDowell's actions which were used to silence Plaintiffs' speech and created a school environment where religious viewpoints were treated unequally to favor views supporting the homosexual lifestyle.

Plaintiff D.K.G. sincerely holds the Catholic views he was punished for voicing on October 20, 2010.  *See* (Dep. of Daniel Glowacki at 45-47 at Ex. 1).  Plaintiff's brother, D.C.G. is currently a student at Howell High School and holds the same views as Plaintiff D.K.G.  Quite pointedly, Plaintiff D.C.G. asserts his claim so "That other students or me would not be punished for speaking my beliefs in class."  (Dep. of Drake Glowacki at Ex. 19 at 9).

### III.   SCHOOL DISTRICT POLICY AND GUIDELINES AUTHORIZED THE SPEECH RESTRICTION AND THE VIOLATION OF EQUAL PROTECTION.

The School District has a written policy regarding "religious expression in the district," which states that "School officials . . . should intercede to stop student speech that constitutes harassment aimed at a student group or a group of students." (Dep. of Defendant McDowell at Ex.12); (Dep. of Aaron Moran at 58 at Ex. 7); (Dep. of Ron Wilson at 72 at Ex. 9).  Defendant McDowell was acting in compliance with this policy when he threw Plaintiff D.K.G. from his classroom.  Indeed, Defendant McDowell was familiar with this policy of the School District. (Dep. of Defendant McDowell at 108-09 at Ex. 6) (although stating that he relied on the School District's snap suspension policy).  Defendant McDowell asserted numerous times that "I believe I acted within school board policies" when throwing Plaintiff D.K.G. from class. (Dep. of Defendant McDowell at 134 at Ex. 6); *see also* (Dep. of Defendant McDowell at 129 at Ex. 6) (school policies were a moving force behind removing Plaintiff D.K.G from class).

The School District held trainings and brought in Dr. Marcia McEvoy to present an "in service" to the high school teachers immediately prior to the beginning of the 2010-11 school year.  In cohesion with the policy "to stop student speech that constitutes harassment aimed at a student group or a group of students," the training called for teachers to act immediately if they perceived any sort of harassment.  (Dep. of Aaron Moran at 12-14 at Ex. 7) ("Q. And that was what the training was teaching? A.  Going about how to address it.  Q. And address it directly? A.  Directly.  Q. And immediately upon seeing the bullying activity? . . . To address the bullying immediately upon seeing it occur?  A.  Correct."); (Dep. of Defendant McDowell at 47 at Ex. 6) ("Q. And were you called upon to immediately stop it with that student right then and there?  A. Yes, right then and there, immediate intervention, yes. Q. According to the training, were you

called upon to stop the student's speech in the middle of the class?   A.  If the speech is inappropriate, yes.  Q. And what did they say was inappropriate speech during the training? . . . A. Speech that degrades or threatens a group or an individual student.").  However, no definition or clarity was given regarding what harassment or bullying might be.  (Dep. of Defendant McDowell at 47 at Ex. 6) ("Q. And was there any other definition of what exactly that speech would be? A. Not that I recall at this time, no.  Q. So it was left up to the personal subjectivity of each teacher? A. Yes.  Q. During the training, was there ever discussion about how different students could have different religious viewpoints?  A. No.").  The training included role-playing which discussed bullying toward homosexuals.  (Dep. of Aaron Moran at 76 at Ex. 7) ("Q. Have you gone through the different literature by Dr. McEvoy?  A.  Uh-huh.  Q. Are you aware that she says –she brings up different examples of things to bring up with students?  A.  Uh-huh.  Q. Like calling another person gay?  A.  Uh-huh.").  However, the training never addressed what was appropriate to say under the First Amendment and how teachers were to treat the religious viewpoints of its students.  (Dep. of Defendant McDowell at 44 at Ex. 6).

Most disturbing is that the School District never required any training prior to October 20, 2010 regarding its policies or the protections of the First Amendment.  *See* (Dep. of Ron Wilson at 24 at Ex.  9) ("Is there ever any training specifically targeted for teachers to understand[] the policies and guidelines?  A.  No.").  Defendant McDowell admitted that he did not read all of the school's policies, nor was there a mandate or system to ensure that teachers at minimum read the school policies, thus explaining the great divergence in interpretation between employees of the School District.  *See* (Dep. of Defendant McDowell at 89-91 at Ex. 6) (discussing that homosexual, teen suicide was not a controversial topic- an answer completely retrograde to the response of principal Aaron Moran, who stated it was a controversial subject

that should not be taught unless permission was gained from the student's parents).  Defendant McDowell even stated that he needed specific guidelines not currently present in school policy "as to specifically what I'm supposed to do in discussing it [*homosexuality*].  (Dep. of Defendant McDowell at 93 at Ex. 6).

## IV.   DEFENDANT MC DOWELL'S MEDIA FRENZY

After October 20, 2012, Defendant McDowell took what occurred in his classroom and posted it on facebook.com, a social networking website which allows its users to share information.  Defendant McDowell used facebook.com to share with others information about Plaintiff D.K.G. and what occurred in his classroom.  (Dep. of Defendant McDowell at 28-9 at Ex. 6).  On November 5, 2010, the Superintedent of the Howell School District emailed Defendant McDowell and stated "The media frenzy prompted by your Facebook page has harmed the Glowacki family and our district."  (Dep. of Defendant McDowell at 227 at Ex. 6).  Defendant McDowell gave interviews both locally and nationally, making unflattering statements about Plaintiff D.K.G., including interviews with WDIV, Channel 4 News, and MSNBC. (Dep. of Defendant McDowell at 227, 229 at Ex. 6).

## ARGUMENT

## I.   PLAINTIFFS' FIRST AMENDMENT CLAIMS ARE NOT DE MINIMIS IN NATURE

The U.S. Supreme Court has unequivocally held that "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Defendant Howell Public School District incorrectly asserts that a violation of First Amendment freedoms equates only a de minimis injury that is outside of the purview of the court.  Such a finding would gut 42 U.S.C. § 1983, and leave wronged Plaintiffs without redress for violations which our constitution seeks to protect.

Plaintiffs assert in their complaint that "The School District's policies, practices, customs, and/or procedures as set forth in this Complaint were the moving force behind the violation of Plaintiff D.K.G.'s right to freedom of speech, and these policies, practices, customs, and/or procedures have had a chilling effect on the free speech rights of other students, including Plaintiff D.C.G., in violation of the First Amendment." (Compl. at ¶ 70). Plaintiffs address the analysis for a First Amendment violation in its Summary Judgment Motion. (Doc. #24).

Defendant Howell Public Schools now claims that the "Plaintiffs seek to subject constitutional scrutiny to one of the most common and trivial school disciplinary actions- a teacher's removal of a student from the classroom for roughly 35 minutes. (Def. Br. at 7). Such an assertion misses the point of why the Plaintiffs' filed suit in the first place. More properly stated, the Plaintiffs' seek redress from this Court for the violation of First Amendment freedoms. Plaintiff D.K.G. was silenced due to voicing his religious beliefs, in response to Defendant McDowell's questioning. Plaintiff D.C.G.'s speech is chilled due to Defendant's McDowell's actions, and Defendant McDowell undisputably removed Plaintiff D.K.G. from class due to his comments regarding his religious beliefs on homosexuality. (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Affidavit of Brandon Szuch at Ex. 2). Removal from the educational environment in which a student is denied the educational process, for any length of time, is not de minimis or insignificant. Not relevant to Plaintiffs' claim, but in response to Defendant's assertion, Plaintiff D.K.G. suffered through the irresponsible handling of local and national media. As the Superintendent of Howell Public School District stated, "The media frenzy prompted by your [*Mr. McDowell's*] Facebook page has harmed the Glowacki family and our district." (Dep. of Defendant McDowell at 227 at Ex. 6).

13

Defendant misses the mark in this unsupported argument.  Plaintiffs seek the vindication of declaratory and injunctive relief from this Court.  Plaintiffs only seek what the Constitution protects—the freedom to hold a religious belief and state it honestly when questioned, even if that belief is different from a public school teacher's.  The cases cited in Defendant Howell Public School District's motion are not controlling, and do not accurately reflect the holdings asserted in the Defendant's brief.  For example in *Lownsberry v. Lees*, 2008 U.S. Dist. LEXIS 90959 ( E.D. Mich. Nov. 7, 2008), the Court actually held that the defendants were *not state actors*—not that Plaintiffs claim was de minimis.  *Wood v. Strickland*, 420 U.S. 308 (1975) fails to discuss a de minimis constitutional violation.  In *Henley v. Tullahoma City Sch. Sys.*, 84 Fed. Appx. 534 (6th Cir. 2003) the Court held that Plaintiffs' failed to establish a prima facie case as there was no causal connection between protected speech and retaliation and was silent on the issue of a de minimis violation.  Lastly, Defendant addresses Plaintiff D.K.G. discussing his religious beliefs in a video made off of school premises in 2012.  (Def. Br. at 8).  Participation in such a video fails to diminish or mitigate what occurred in Defendant McDowell's classroom.

## II.    DEFENDANT MC DOWELL VIOLATED PLAINTIFFS' CONSTITUTIONAL RIGHTS GUARANTEED TO THEM BY THE EQUAL PROTECTION CLAUSE

To establish a violation of the *Equal Protection Clause*, Plaintiffs must first show that the Defendants' actions result in similarly-situated individuals receiving disparate treatment. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Gillard v. Norris*, 857 F.2d 1095, 1101 (6th Cir.1988); *Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780, 806 (2003).  If it is shown that similarly-situated persons receive disparate treatment, and if that disparate treatment invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, and the Defendant's actions will be sustained only when they are narrowly tailored to a serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292,

302 (1993); *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 621 (6th Cir.1997) (quoting *City of Cleburne*, 473 U.S. at 440).  Here, similarly situated persons receive disparate treatment which invades a fundamental right.  Therefore, the rigorous "strict scrutiny" standard governs, and the Defendant's actions cannot be sustained because they are not narrowly tailored to serve a compelling government interest.

During his deposition, Defendant McDowell admitted that he finds student speech acceptable supporting homosexuality, but finds *unacceptable* student speech that does not support homosexuality based upon *religious viewpoint*.  (Dep. of Defendant McDowell Ex. 103-7 at Ex. 6).  Point blank, Defendant McDowell stated that he would allow statements of students in his classroom expressing support for homosexuality, but would send a student to the office for making statements unsupportive of homosexuality for religious reasons—this is disparate treatment invading the fundamental rights of free speech and freedom of religion.

Defendant Howell Public School District incorrectly argues that Plaintiff D.K.G. is a "class of one" and erroneously relies upon a case, *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006), which solely analyzes equal protection in the *freedom of association context* to an unprotected class.  *Id.* at 261.  Here, Plaintiffs are not a "class of one" and assert that "By favoring speech that promotes and approves of homosexuality and punishing Plaintiffs' less favored religious view toward homosexuality, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment." (Compl. at ¶ 79).  This class encompasses those who hold religious views which do not promote the homosexual lifestyle, such as Plaintiffs D.K.G. and D.C.G., and students at Howell High School.  (Affidavit of Danielle Kollath at Ex. 3).  Vastly dissimilar from *Scarbrough*, Plaintiffs' equal protection claim stems from their most fundamental freedoms of speech and religion for which the Court necessarily applies strict

15

scrutiny review. *Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780, 807 (2003) (applying strict scrutiny and holding that a School District's disparate treatment of religious individuals regarding the issue of homosexuality violated equal protection); *see also Employment Div. Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 886, n. 3 (1990); *Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 714 (1994); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972). Defendants cannot overcome strict scrutiny review and Plaintiffs should prevail.

## III.    THE SCHOOL DISTRICT HAS CHILLED PLAINTIFF D.C.G.'S RIGHT TO FREE SPEECH THEREFORE THE SCHOOL DISTRICT IS NOT ENTITLED TO SUMMARY JUDGMENT ON D.C.G.'S CLAIM

Plaintiff D.C.G. has standing to assert his claim. The chill upon one's constitutionally protected speech satisfies standing. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002) ("even minor punishments can chill protected speech"); *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994) ("a chilling effect on one's constitutional rights constitutes a present injury in fact"); *N.H. Right to Life Policical Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996) ("[A]n actual injury can exist when the plaintiff is chilled from exercising her right to free expression.").

Plaintiff is currently a student at Howell High School and holds the same views as Plaintiff D.K.G. Plaintiff D.C.G. sincerely holds the Catholic views for which was D.K.G. was punished for voicing on October 20, 2010. Plaintiff D.C.G. asserts his claim, in his own words, so "That other students or me would not be punished for speaking my beliefs in class." (Dep. of Drake Glowacki at Ex. 19 at 9). Plaintiff D.C.G. is subject to the same free speech restrictions and same School District policies, customs, and procedures that were the moving force behind the deprivation of Plaintiff D.K.G.'s constitutional rights. Plaintiff D.C.G. has seen firsthand what voicing his Catholic religious beliefs, such as being suspended from class and being the target of "media frenzy." Knowing these ramifications for voicing his protected speech, D.C.G.

seeks refuge from the Court to restore his constitutional freedoms and allow him to "not be punished for speaking my beliefs in class."

## IV.    LIABILTIY MUST EXTEND TO THE SCHOOL DISTRICT

Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law. 42 U.S.C. § 1983.  To prevail in a § 1983, Plaintiffs must show that the alleged federal right violation occurred because of a municipal policy or custom. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  This can be proven by the existence of an illegal policy or custom in the form of "(1) . . . official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. Tenn. 2005), *quoting Monell* at 436 U.S. 694, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, (1986); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir. 1996).  Here, Plaintiffs' primary theory of liability is ***not*** failure to train, but that liability must attach to the School District for its constitutional violation because the execution of its policy or custom inflicts the alleged injury.  *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) (*citing Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). The Sixth Circuit explained that "[t]he official policy or custom 'must be the *moving force* of the constitutional violation' to establish the liability of a government body." *Ibid. (quoting Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981))(emphasis added).  Defendant McDowell testified in no uncertain terms that the School District policies were—quoting the deposition testimony—a "*moving force*" behind restricting Plaintiff D.K.G.'s speech and moving Plaintiff D.K.G from class.  (Dep. of Defendant McDowell at 129 at Ex. 6).

Furthermore, the absence of a written policy endorsing the constitutional violation is also not fatal to a claim. "Section 1983 'authorizes suit 'for constitutional deprivations visited pursuant to [a] 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Cash v. Hamilton Cnty. Dep't of Adult Probation*, 388 F.3d 539, 542-43 (6th Cir. 2004) (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). To sustain liability under this theory, a plaintiff must "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so well settled as to constitute a custom or usage with the force of law." *Id.* at 543 (citation and quotation marks omitted). While a School District is permitted to ban a certain expression because the school reasonably forecasts that the expression will cause a substantial disruption of school activities, ***the ban must be viewpoint neutral***. *Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 543-44 (6th Cir. 2001); *see also Tinker*.

The School District has a written policy regarding "religious expression in the district," which call for "School officials . . . [*to*] intercede to stop student speech that constitutes harassment aimed at a student group or a group of students." (Dep. of Aaron Moran at 58 at Ex. 7); (Dep. of Ron Wilson at 72 at Ex. 9). Defendant McDowell was acting in compliance with this policy when he threw Plaintiff D.K.G. from his classroom. Indeed, Defendant McDowell was familiar with this policy of the School District. (Dep. of Defendant McDowell at 108-09 at Ex. 6). Defendant McDowell has asserted numerous times that "I believe I acted within school board policies." (Dep. of Defendant McDowell at 129, 134 at Ex. 6).

The School District held trainings and brought in Dr. Marcia McEvoy to present an "in service" to the high school teachers immediately prior to the beginning of the 2010-11 school year. In cohesion with the policy "to stop student speech that constitutes harassment aimed at a

student group or a group of students," the training called for teachers to act *immediately* if they perceived any sort of harassment.  (Dep. of Aaron Moran at 12-14 at Ex. 7); (Dep. of Defendant McDowell at 47 at Ex. 6).  However, no definition or clarity was given regarding what harassment or bullying might be.  The training never addressed what was appropriate to say under the First Amendment and how teachers were to treat the religious viewpoints of its students.  Therefore the policy of the School District was to leave unbridled discretion at the hands of its employees, while directing its employees to intercede and restrict free speech for a multitude of unconstitutional reasons.

Plaintiffs' highlight to the Court the error in the School District's policy that authorizes unbridled discretion without adequate training, while noting that failure to train is *not* the crux of the constitutional violations at issue in this case.  Here, Defendant McDowell even stated that he needed specific guidelines not currently present in school policy "as to specifically what I'm supposed to do in discussing it [*homosexuality*].  (Dep. of Defendant McDowell at 93 at Ex. 6).  The School District admitted that it was "self-evident" that its policy failed to set out clear guidelines.  (Dep. of Ronald Wilson at 59 at Ex. 9) ("given the incident that occurred on the 20th [of October, 2010] and then subsequent questions about, you know, how we should handle those types of situations, it seemed somewhat self-evident that we needed to go ahead and review this with our staff and make sure that we *set* some clear guidelines") (emphasis added).

Addressing the Defendant's contention regarding any argument under the "failure to train theory"—which again does *not* serve as the true basis for Plaintiffs' claim that the School District's policies were the "moving force" behind the Plaintiffs' deprivation of constitutionally guaranteed freedom (Compl. at ¶ 31).  Plaintiffs argue that the manner in which School District employees were "directed and trained pursuant to the School District's 'harassment speech'

policy to intercede to stop student speech that they believed constituted harassment aimed at a student group or a group of students, including students who were homosexuals.  Teachers were directed and trained to stop speech that was considered bullying, hate speech, homophobic, or otherwise not accepting of homosexuality."  (Compl. at ¶ 32).

As a matter of principle, it should be noted that the School District's training failed to adequately protect the Plaintiffs' constitutional freedoms and that inadequacy exhibited a deliberate indifference to Plaintiffs' constitutional freedoms.  The School District never required any training prior to October 20, 2010 regarding its own policies or the protections of the First Amendment.  Defendant McDowell admitted that he has not read all of the school's policies, nor was there a mandate or system to ensure that teachers at read the School District's policies.  Such blatant inadequacies in training are, as the School District itself stated, are "self-evident."

## CONCLUSION

For the reasons stated in this brief, Plaintiffs request this Court DENY Defendant's motion and GRANT summary judgment in Plaintiffs' favor under Fed. R. Civ. P. 56(f) to any extent an issue addressed in this brief was not fully addressed in Plaintiffs' own motion for summary judgment.  (Doc. #24).  Plaintiffs, furthermore, request an award of costs and attorneys fees pursuant to 42 U.S.C. § 1986.

Respectfully submitted,

THOMAS MORE LAW CENTER

s/ Richard Thompson
Richard Thompson, Esq.

s/ Erin Mersino
Erin Mersino, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2012, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S. Mail upon all parties for whom counsel has not yet entered an appearance electronically: None.

THOMAS MORE LAW CENTER
s/ Erin Mersino
Erin Mersino, Esq. (P70886)
