IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SANDRA GLOWACKI, on behalf of her
minor children, D.K.G. and D.C.G.,

        Plaintiffs,

   v.

HOWELL PUBLIC SCHOOL DISTRICT, and
JOHNSON ("JAY") MCDOWELL, individually
and in his official capacity as a teacher in the
Howell Public School District,

        Defendants.

Case No. 2:11-cv-15481-PJD-DRG

PLAINTIFFS' RESPONSE TO
DEFENDANT
MC DOWELL'S MOTION
FOR SUMMARY
JUDGMENT

Hon. Patrick J. Duggan

Mag. Judge David R. Grand

THOMAS MORE LAW CENTER
Richard Thompson (P21410)
Erin Mersino, Esq. (P70886)
24 Frank Lloyd Wright Dr.
P.O. Box 393
Ann Arbor, MI 48106
emersino@thomasmore.org
(734) 827-2001

AMERICAN FREEDOM LAW CENTER
Robert J. Muise (P62849)
P.O. Box 131098
Ann Arbor, MI 48113
rmuise@americanfreedomlawcenter.org
(734) 635-3756
Counsel for Plaintiffs

THRUN LAW FIRM, P.C.
Roy Henley (P39921)
2900 West Road, Suite 400
P.O. Box 2575
East Lansing, MI 48826-2575
rhenley@thrunlaw.com
(517) 484-8000
Counsel for Defendant Howell
Public School District

PLUNKETT COONEY
Suzanne Bartos (P36490)
535 Griswold, Suite 2400
Detroit, MI 48226
sbartos@plunkettcooney.com
(313) 983-4741
Counsel for Defendant Johnson
("Jay") McDowell

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT MC DOWELL'S MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................... ii

CONCISE STATEMENT OF ISSUES PRESENTED.................................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF
REQUESTED .................................................................................................................. iv

INTRODUCTION ............................................................................................................1

COUNTER-STATEMENT OF FACTS .........................................................................1

ARGUMENT ..................................................................................................................10

I.      DEFENDANT MC DOWELL IS NOT ENTITLED TO QUALIFIED
IMMUNITY…………………………………………………………………...……10

      a.  The Right to Both Free Speech and Freedom of Religion Are Clearly
Establish…………………………………………………………………...…11

      b.  Defendant McDowell Reasonably Knew That His Actions Would Silence Plaintiffs'
Speech...………………………………………………………………………...11

II.     PLAINTIFFS' FIRST AMENDMENT RIGHTS WERE
VIOLATED………………………………………………………………...……13

III.    DEFENDANT MC DOWELL VIOLATED PLAINTIFFS' CONSTITUTIONAL
RIGHTS GUARANTEED TO THEM BY THE EQUAL PROTECTION CLAUSE.................16

IV. PLAINTIFFS' CLAIMS ARE NOT DE MINIMIS .............................................18

V.      THE SCHOOL DISTRICT HAS CHILLED PLAINTIFF D.C.G.'S RIGHT TO FREE
SPEECH THEREFORE THE SCHOOL DISTRICT IS NOT ENTITLED TO SUMMARY
JUDGMENT ON D.C.G.'S CLAIM ...........................................................................19

CONCLUSION...............................................................................................................20

CERTIFICATE OF SERVICE .....................................................................................21

## STATEMENT OF QUESTIONS PRESENTED

I.   Whether Defendant McDowell is entitled to qualified immunity when he violated Plaintiffs clearly established rights to free speech and freedom of religion and he reasonably new that his actions were unlawful?

II.  Whether the Plaintiffs' First Amendment rights were violated by Defendant McDowell restricting Plaintiffs' protected speech based upon viewpoint?

III. Whether Defendant McDowell violated Plaintiffs' constitutional rights guaranteed to them by the Equal Protection clause?

IV.  Whether the Plaintiffs' First Amendment claims are de minimis in nature when the claims involve the loss of First Amendment freedoms and equal protection from religious discrimination?

V.   Whether Plaintiff D.C.G.'s claim under the First Amendment should be dismissed when the Defendants chilled Plaintiff D.C.G's free speech?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF REQUESTED

*Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780 (2003)

*Zamecnik v. Indian Prairie School Dist. # 204*, 636 F.3d 874 (7th Cir. Ill. 2011)

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)

## INTRODUCTION

As the Supreme Court emphasized in a case *arising out of a public school context*, "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion. *W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Students possess constitutional rights on a public school campus—a conclusion that can only be changed by the Supreme Court. School officials must abide by the proscriptions set forth in the First Amendment—proscriptions that are not mere platitudes to be cast aside to avoid discomfort or discourse that might accompany differing viewpoints, even when that means allowing religious speech with the viewpoint that the act of homosexuality is unacceptable alongside speech supporting it.

## COUNTER-STATEMENT OF FACTS

This case is about a 16-year-old boy, Plaintiff D.K.G., and the unconstitutional acts of Defendant McDowell, the boy's Economics Teacher and the President of the Teacher's Union, who brashly threw the boy out of class after prying into the child's religious views, and ridiculing the child for being Catholic and following the Church's teachings in regard to homosexuality. (Dep. of Daniel Glowacki at Page 32 at Ex. 1) ("Q. Do you have a belief on homosexuality? A. Yes. Q. What is your belief – A. It's against my religion. It's against my beliefs. Q. When you say it's against your religion, what do you mean it's against your religion? A. As I was raised, homosexuality is against my religion. I was raised that it is right for a male and a female to be married, not another male and another male. That's how I was raised.").

This case is ***NOT*** about bullying. Defendant McDowell asserts the bizarre notion that Plaintiffs' religious beliefs somehow equate bullying. In stating "My *religion* does not accept gays," the Plaintiff D.K.G. was actually, however, responding to a direct question posed by his

teacher Defendant McDowell about the Plaintiff's religious beliefs.  (Dep. of Daniel Glowacki at Page 76-77 at Ex. 1) ("Q. Do you remember what words you actually used?  A. 'My religion does not accept gays.'"); (Affidavit of Brandon Szuch at Ex. 2) (D.K.G. "said it was against his religion to be gay."); (Affidavit of Danielle Kollath at Ex. 3) (D.K.G. "said it was against his religion to accept gays.  Mr. McDowell said 'Your religion cannot say whether you like or dislike gays.'  I felt that Mr. McDowell was bashing religion."); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).

Plaintiff D.K.G. was then told to leave class for holding religious beliefs in accordance with his Catholic faith.  (Dep. of Daniel Glowacki at Page 32 at Ex. 1); (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Guernsey at 58-64 at Ex. 13).  He did *not* bully any individual for being homosexual on October 20, 2010 nor has he ever bullied any one for being homosexual.  Plaintiff D.K.G. agrees that bullying is wrong.  (Dep. of Dr. Guernsey at 58-64 at Ex. 13)..  ***Plaintiff D.K.G. never stated that he "had anything actually against people who are gay," never used "any offensive language," never used "any derogatory terms to describe people who are gay," never made "any statements about disliking people who are gay," never made "any statements about treating people who are gay poorly because they were gay," and never made "any statements about wanting to do something to hurt anyone who was gay."***  (Dep. of Defendant McDowell at 157-8 at Ex. 6).

## I.        OCTOBER 20, 2010, "ANTI-BULLYING/SPIRIT DAY"

On October 20, 2010, teachers and students of Howell High School celebrated what the Gay & Lesbian Alliance Against Defamation ("GLAAD") nationally advertised as "Spirit Day" and Howell High School's Gay Straight Alliance deemed "Anti-Bullying Day."   (Dep. of Defendant McDowell at 117-28 at Ex. 6).  The purpose of "Anti-Bullying/Spirit Day" was to

support the gay, lesbian, bisexual, and transgender lifestyle ("LGBT") and to honor homosexual teenagers who recently committed suicide.  (Dep. of Defendant McDowell at 117-28 at Ex. 6). The Principal of Howell High approved a flyer advertising the day, calling for teachers and students to wear purple in support of the LGBT lifestyle.  (Dep. of Defendant McDowell at 117-28 at Ex. 1); (Dep. of Aaron Moran at 49-56 at Ex. 7).  Defendant McDowell believed that the event was "okayed by the school." (Dep. of Defendant McDowell at 145 at Ex. 6). There may have been a rainbow flag sticker affixed to the door of his classroom, as such stickers had been placed on several doors throughout the school. (Dep. of Defendant McDowell at 161 at Ex. 6).

A Howell High School teacher, Wendy Hiller, made a purple t-shirt with the silkscreened words "Tyler's Army." "Tyler's Army" referenced support for an 18-year-old homosexual named Tyler Clementi, whose college roommate videotaped him performing homosexual sex. This tragically drove Mr. Clementi end his own life.  Hiller used the name "Tyler's Army" to reference "Dumbledore's Army," a character in the Harry Potter books rumored to be homosexual.  (Dep. of Wendy Hiller at 13 at Ex. 8); (Dep. of Defedant McDowell at 119 at Ex. 7).  Staff members of Howell High School, including Defendant McDowell, decided to wear the purple Tyler's Army t-shirts and discuss the "Anti-Bullying/Spirit Day" in class. (Dep. of Defendant McDowell at 117-28 at Ex. 7). On October 20, 2010, McDowell wore the purple "Tyler's Army" t-shirt and began each of his classes by showing a video about homosexual teens committing suicide.  (http://www.gaypolitics.com/2010/10/13/out-fort-worth-city-councilman-tells-personal-bullying-story, last visited November 15, 2012).

On the previous day, the Superintendent of Howell Public Schools Ronald Wilson had received a parent complaint inquiring whether Howell High School was supporting a Gay Pride Rally.  (Dep. of Ronald Wilson at 35 at Ex. 9).  Wilson was informed that the Gay Straight

Alliance called for students and teachers to wear purple on October 20th to stop homophobia. (Dep. of Ronald Wilson at 36 at Ex. 9).

## II.   DEFENDANTS RESTRICTED PLAINTIFFS' FREE SPEECH AND EQUAL PROTECTION OF THE LAW.

On October 20, 2010, Defendant McDowell began his 6th hour economic class wearing his purple "Tyler's Army" t-shirt.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).  He first reprimanded a female student for wearing a confederate flag belt buckle in his class and had the student remove the belt buckle.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).  He then explained that October 20th was "Anti-Bullying/Spirit" Day and the students were going to watch a movie about Homosexual Teen Suicide and how homosexuals face discrimination.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).  Confused after Defendant McDowell asked the female student to remove her belt buckle, Plaintiff D.K.G. asked Defendant McDowell about the difference between Confederate Flags and symbols promoting gay rights, and why wearing a message promoting gay rights was acceptable in the school but wearing a Confederate Flags belt buckle was not.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5). Defendant McDowell responded by discussing that a symbol, such as the rainbow flag, symbolizes the gay community, but the confederate flag represents something to the effect of "killing people and hanging and skinning people alive." (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep.

of Defendant McDowell Ex. 17 at Ex. 5).   In front of the class, Defendant McDowell asked Plaintiff D.K.G. if he "supported gays." (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).  Plaintiff D.K.G. responded by saying that *his religion* did not accept gays.   (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Dep. of Daniel Glowacki at Page 32, 76-77 at Ex. 1).   Plaintiff D.K.G. is a Catholic who had been taught to strictly follow the Magisterium of the Catholic Church and its sexual teachings.  (Compl. at ¶¶ 41-46).  Plaintiff's faith teaches that homosexual acts are amoral, sinful, and contrary to natural law.  (Compl. at ¶¶ 41-46); (Dep. of Dr. Guernsey at 58-64 at Ex. 13).

Defendant McDowell admitted that "I did get emotional at this time." (Dep. of Defendant McDowell Ex. 17 at Ex. 5).  He told Plaintiff D.K.G. that he could not express his religious belief on homosexuality in class and that "It doesn't matter if it is your religion, you can't say it in class." (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4).  He equated Plaintiff D.K.G.'s religious belief to racism, and not accepting blacks.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell at 17 at Ex. 5); (Dep. of D.K.G. at 58-59 at Ex. 1); (Dep. of Defendant McDowell at183-4) (admitting that after ordering Plaintiff D.K.G. from class he told Plaintiff D.K.G. "that what he said was inappropriate, that some people would compare it to racism, and that they couldn't come back in class").  Defendant McDowell told Plaintiff D.K.G. that if he really were Catholic, then he should attend a Catholic school. (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep.

of D.K.G. at 59 at Ex. 1).  He then asked Plaintiff D.K.G. if he accepted gays, and Plaintiff D.K.G. answered that he did not based upon his religious beliefs.  (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Affidavit of Brandon Szuch at Ex. 2).  Defendant McDowell admits that he finds student speech acceptable supporting homosexuality, but finds *unacceptable* student speech that does not support homosexuality based upon *religious viewpoint*. (Dep. of Defendant McDowell Ex. 103-7 at Ex. 6).  In accordance with this viewpoint discrimination, McDowell, immediately and in a state of anger, threw Plaintiff D.K.G. "out of class and wrote up a referral for unacceptable behavior"—voicing religious beliefs that did not support or promote the rights of homosexuals.  (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Affidavit of Brandon Szuch at Ex. 2).  A security guard heard McDowell slam the classroom door and yell at Plaintiff D.K.G. in the hall.  (Affidavit of David DeVries at Ex. 10).  Plaintiff D.K.G., calmly and cooperatively, told the guard that he had not done anything to merit being thrown out of class; Defendant McDowell was yelling and in a state of anger.  (Affidavit of David DeVries at Ex. 10).

When Defendant McDowell returned to his class, he engaged the class in a conversation about gay rights.  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3). He showed a video discussing suicide amongst homosexual teenagers. (http://www.gaypolitics.com/2010/10/13/out-fort-worth-city-councilman-tells-personal-bullying-story, last visited November 15, 2012).  According to students in the class, Defendant McDowell made comments during the class that made his students "feel small" and were "attacking my religion and family." (Affidavit of Danielle Kollath at Ex. 3).  Many "felt uncomfortable in the classroom" and that Plaintiff D.K.G. "did nothing wrong" by saying "it was against his religion to be gay."  (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3).

After an investigation into Defendant McDowell's 6th hour Economic class, Howell Public Schools initially reprimanded Defendant McDowell finding, "Students' First Amendment Rights were violated. . . .You went on to discipline two students [one of the students being Plaintiff D.K.G.] who told you they do not accept gays due to their religion.  After failure of getting one student to recant, you engaged in an unsupported snap suspension, rather than allow the student his beliefs.  You not only missed an opportunity to model a mature and professional response, you modeled oppression and intolerance of student opinion.  You did this based on your own discomfort with their belief and how it related to a personal experience.  This could be construed as teacher-to-student bullying; ironic of the Anti-Bullying Day intent. . . . As a result of your behaviors, you will receive a one day suspension without pay, a written reprimand will be placed in your personnel file, and you are mandated to engage in training on First Amendment Rights. (Dep. of Defendant McDowell at Ex. 13 at Ex. 11).

However after the initial reprimand Defendant McDowell, the President of Howell's teacher's union, filed a grievance against the school and the school reversed its decision.  The school reinstated Defendant McDowell's lost pay and removed his one day suspension; the school made training on First Amendment Rights mandatory for all Howell High School Teachers, and replaced the reprimand in Defendant McDowell's personnel file.  *See* (Dep. of Ronald Wilson at 59 at Ex. 9) (" . . . given the incident that occurred on the 20[th] [of October, 2010] and then subsequent questions about, you know, how we should handle those types of situations, it seemed somewhat self-evident that we needed to go ahead and review this with our staff and make sure that we set some clear guidelines to ensure we don't have a repeat."). The new reprimand placed in McDowell's file was innocuous to his misdeeds when compared to the original reprimand; however, the replacement reprimand did state the following:

> You are receiving a written reprimand after an investigation into an incident when you slammed your door, raised your voice, and attempted to discipline students for their beliefs. . . . In addition, you loudly and angrily dismissed another student from the class for expressing an opinion which you deemed intolerant and unacceptable, an action which may have violated the student's right to free speech.

(Dep. of Defendant McDowell at Ex. 14 at Ex. 12); *see* (Dep. of Dr. Guernsey at 49 at Ex. 13) (describing replacement reprimand, "A. It's inadequate, especially when compared with the reprimand of October 25th by Moran and Moore, that, in my estimation, is a more appropriate articulation of the severity of what happened in that classroom towards the denial of [D.K.G.'s] rights. . . . Mr. McDowell was guilty of unprofessional, unethical conduct which deprived the student of his rights.  His behavior in the classroom, as I articulated in my report, was grossly inadequate, and unfair and created a hostile environment, not just for [D.K.G.], but for the other student[s] as they articulated in their response to the incidents."); *see also* (Expert Report of Dr. Guernsey, Defense Ex. 38 at Ex. 14).  On October 27, 2011, Plaintiff Sandra Glowacki requested that her son, D.K.G. be removed from McDowell's class, and the school honored the Plaintiff's request and placed D.K.G. in a different 6th hour Economics course.  (Dep. of Aaron Moran at 63).  Indeed, even the Principal of Howell High School disagreed with Defendant McDowell's actions.  (Dep. of Aaron Moran at 45 at Ex. 7).  Defendant McDowell admitted himself that he wished Plaintiff D.K.G. simply would not express his religious viewpoint again.  (Dep. of Defendant McDowell at Ex. 18 at Ex. 18).  *Any other explanation for silencing Plaintiff D.K.G.'s speech* (for voicing religious views contrary to Defendant McDowell's position on homosexuality) should be recognized for what it is—*nothing more than subterfuge*.

Howell administrators allowed the disparate treatment of the Plaintiffs' religious views. The principal approved the syllabus, which barred statements deemed to be "homophobic" in Defendant McDowell's class, but offered no protection for religious viewpoints.  (Dep. of

8

Defendant McDowell Ex. 15 at Ex. 15).  The syllabus was approved by the principal with the knowledge that certain religions, such as Plaintiffs' Catholic religion, did not support the homosexual lifestyle. *See* (Dep of Aaron Moran at 70 at Ex. 7). Furthermore, the School District established training and set forth policies and guidelines enabling Defendant McDowell's actions which were used to silence Plaintiffs' speech and created a school environment where religious viewpoints were treated unequally to favor views supporting the homosexual lifestyle.

Plaintiff D.K.G. sincerely holds the Catholic views he was punished for voicing on October 20, 2010.  *See* (Dep. of Daniel Glowacki at 45-47 at Ex. 1).  Plaintiff's brother, D.C.G. is currently a student at Howell High School and holds the same views as Plaintiff D.K.G.  Quite pointedly, Plaintiff D.C.G. asserts his claim so "That other students or me would not be punished for speaking my beliefs in class."  (Dep. of Drake Glowacki at Ex. 19 at 9).

### III.    DEFENDANT MC DOWELL'S MEDIA FRENZY

After October 20, 2012, Defendant McDowell took what occurred in his classroom and posted it on facebook.com, a social networking website which allows its users to share information.  Defendant McDowell used facebook.com to share with others information about Plaintiff D.K.G. and what occurred in his classroom.  (Dep. of Defendant McDowell at 28-9 at Ex. 6).  On November 5, 2010, the Superintendent of the Howell School District emailed Defendant McDowell and stated "The media frenzy prompted by your Facebook page has harmed the Glowacki family and our district."  (Dep. of Defendant McDowell at 227 at Ex. 6).  Defendant McDowell gave interviews both locally and nationally, making unflattering statements about Plaintiff D.K.G., including interviews with WDIV, Channel 4 News, and MSNBC. (Dep. of Defendant McDowell at 227, 229 at Ex. 6).

**ARGUMENT**

**I.   DEFENDANT MC DOWELL IS NOT ENTITLED TO QUALIFIED IMMUNITY**

As an initial matter, qualified immunity does not protect a defendant against claims for declaratory and injunctive relief, nor does it apply to claims against a municipality, such as the claims advanced against the School District.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) (noting that qualified immunity is unavailable "in a suit to enjoin future conduct [or] in an action against a municipality"); *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) ("Qualified immunity . . . does not bar actions for declaratory or injunctive relief.").  Also, because Defendant McDowell is sued in his official capacity, qualified immunity does not apply.  *Hall v. Tollett*, 128 F.3d 418, 430 (6th Cir. 1997) ("Qualified immunity shields defendant from personal liability, but it does not shield him from the claims brought against him in his official capacity.").

Moreover, state actors are protected from personal liability and thus enjoy qualified immunity only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted).  (2009).  Here, Plaintiffs' right to engage in expression of speech and religious viewpoint to respond to a teacher's inquiry was clearly established on October, 20, 2010.  *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969); *Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780, 814 (2003).

**A. The Right to Both Free Speech and Freedom of Religion Are Clearly Established.**

It is the precedent in this jurisdiction that

> there can be no serious question that the Free Speech and Freedom of Religion constitutional rights asserted by Plaintiffs are very clearly established fundamental rights, and that the contours of these rights were the subject of well-known and well-developed law at the time Defendants acted. Thus, the only question is whether, measured by an objective reasonableness standard, Defendants should have understood that their conduct was unlawful.

*Id.* at 814; *see also Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 824

(6th Cir. 2007) (denying qualified immunity because "Supreme Court decisions . . . recognize

that government actions may not retaliate against an individual for the exercise of protected First

Amendment freedoms" )(internal quotations and citation omitted).  Therefore the only inquiry is

whether is it reasonable for Defendant McDowell to have known his actions were unlawful.

**B. Defendant McDowell Should Have Reasonably Understood That His Actions Would Silence Plaintiffs' Free Speech.**

Defendant, in lieu of teaching his economics and religion courses, wearing a purple t-

shirt in support of homosexual rights and showing a video from the website

(http://www.gaypolitics.com/2010/10/13/out-fort-worth-city-councilman-tells-personal-bullying-

story, last visited November 15, 2012) reasonably should have known that students might inquire

into the topic of his presentation. (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle

Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant

McDowell Ex. 17 at Ex. 5).  Furthermore:

- Despite the persistent misquoting in Defendant McDowell's brief, it is undisputed by Plaintiff D.K.G., Defendants, and the students in the classroom that Plaintiff's statement in class was based upon his religion.  Plaintiff D.K.G. stated "My religion does not accept gays." (Dep. of Daniel Glowacki at Page 76-77 at Ex. 1); *see also* (Affidavit of Brandon Szuch at Ex. 2) (D.K.G. "said it was against his religion to be gay."); (Affidavit of Danielle Kollath at Ex. 3) (D.K.G. "said it was against his religion to accept gays.  Mr. McDowell said 'Your religion cannot say whether you like or dislike gays.'  I felt that

Mr. McDowell was bashing religion."); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4); (Dep. of Defendant McDowell Ex. 17 at Ex. 5).

- Nowhere in Defendant McDowell's initial statement to the School District does he discuss bullying because Defendant's "bullying" theory is nothing more than a self-serving, after the fact justification to avoid liability for his actions. (Dep. of Defendant McDowell Ex. 17 at Ex. 5).

- Plaintiff D.K.G. was not bullying anyone.  According to Defendant McDowell, ***Plaintiff D.K.G. never stated that he "had anything actually against people who are gay," never used "any offensive language," never used "any derogatory terms to describe people who are gay," never made "any statements about disliking people who are gay," never made "any statements about treating people who are gay poorly because they were gay," and never made "any statements about wanting to do something to hurt anyone who was gay."*** (Dep. of Defendant McDowell at 157-8 at Ex. 6).

- Defendant McDowell had a personal reaction and disagreed with Plaintiff D.K.G.'s viewpoint, therefore he kicked Plaintiff D.K.G. out of his class.  (Dep. of Defendant McDowell Ex. 17 at Ex. 5) ("I then asked the student if he accepted gays or not.  He said he did not.  I threw him out of class . . ."); *see* (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3); (Dep. of Dr. Mark Sharp Ex. 35 and 36 at Ex. 4).

- Defendant McDowell threw another student out of class for holding the same views as Plaintiff D.K.G., exhibiting that only students holding one viewpoint on homosexuality was welcome or could espouse their beliefs in his classroom. (Dep. of Defendant McDowell Ex. 17 at Ex. 5) ("Another male student walked in at that moment and said loudly, 'well, I don't accept gays either can I leave.'  I said, 'yes get out'"); *see* (Affidavit of Brandon Szuch at Ex. 2); (Affidavit of Danielle Kollath at Ex. 3).

- Some students felt uncomfortable in Defendant McDowell's class due to Defendant McDowell's behavior.  At least one student "felt that Mr. McDowell was bashing religion." (Affidavit of Danielle Kollath at Ex. 3).

- Plaintiffs' expert holds the opinion that "The teacher created hostile environment where a student [Plaintiff D.K.G.] where a student was deprived his rights to both speak and right right to be present to learn.  Imagine if the student had given the 'correct' 'teacher approved' answer the teacher was looking for and felt pressured to shut up or even publically disavow his religion in an effort to preserve his grade or social standing in the class.  That is not the American way and not indicative of a free and democratic civil education." (Expert Report of Dr. Guernsey, Defense Ex. 38 at Ex. 14).

- Plaintiffs' expert testified at his deposition that "Mr. McDowell was guilty of unprofessional, unethical conduct which deprived the student of his rights.  His behavior in the classroom, as I articulated in my report, was grossly inadequate, and unfair and created a hostile environment, not just for [D.K.G.], but for the other student[s] as they articulated in their response to the incidents." (Dep. of Dr. Guernsey at 49 at Ex. 13).

- Even the Principal of Howell High School disagreed with Defendant McDowell's actions.  (Dep. of Aaron Moran at 45 at Ex. 7) ("Q. In what manner wasn't it handled appropriately, in the way that the student [D.K.G.] was thrown out of class?  A. Well, the manner it was handled from the beginning to the end.  Asking the student – I think in Mr. McDowell's statement, he asked the student his opinion.  He asked it again.  He didn't like the answer.  Well, that doesn't make it okay to kick him out of class because he doesn't agree with you. . . .. It was inappropriate to do that.").

Defendant McDowell, the president of the teacher's union and a teacher of economics and world religion, would reasonably have known that removing a student in class for personally disagreeing with the student's religious viewpoint was wrong.

## II.    PLAINTIFFS' FIRST AMENDMENT RIGHTS WERE VIOLATED

Student speech must be tolerated by the school unless *evidenced* that school authorities have reason to believe that such expression will substantially interfere with the work of the school or impinge the rights of others.  *Barber v. Dearborn Pub. Sch.*, 286 F. Supp. 2d 847 (E.D. Mich. 2003); *Hazelwood*, 484 U.S. at 266 (quoting *Tinker*, 393 U.S. at 509).  Here, Plaintiff D.K.G's statement, "My religion does not accept gays" was made during a portion of class that Defendant McDowell carved out to give a presentation about homosexuality and discrimination, not class time devoted to the topic of economics.   Furthermore, Plaintiff D.K.G.'s statement about his religion did not impinge the rights of others.  Plaintiff D.K.G. did not threaten or bully homosexuals, nor objectively state that homosexuality was wrong.  Plaintiff D.K.G. only stated what his religious views were in response to Defendant McDowell's questioning.   And Defendant McDowell silenced Plaintiff D.K.G.'s speech based upon the viewpoint of his speech, which is fatal to Defendant McDowell's argument even when related to legitimate pedagogical concerns.  *See Searcey v. Harris*, 888 F.2d 1314, 1319, 1325 (11th Cir.); *Kincaid v. Gibson*, 191 F.3d 719, 727 (6th Cir. 1999); *Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780, 797-98 (2003).

To determine whether a restriction is content-based, the courts look at whether it "restrict[s] expression because of its message, its ideas, its subject matter, or its content." *Consol. Edison Co. of N.Y. v. Public Serv. Comm. of N.Y.*, 447 U.S. 530, 537 (1980).  Here, there is no dispute that Defendants restricted Plaintiffs' speech because it conveyed a religious message that was contrary to supporting the homosexual lifestyle.  "The First Amendment does not permit [state actors] to impose special prohibitions on those speakers who express views on disfavored subjects." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995).  And the Supreme Court has held time and again that the fact that someone might take offense at the content of the speech or the viewpoint of the speaker foes not provide a basis for prohibiting the speech. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210 (1975); *Street v. New York*, 394 U.S. 576, 592 (1969); *Snyder v. Phelps*, 131 S. Ct. 1207, 1219 (2011).  Indeed, a listener's reaction is not a legally sufficient basis for restricting speech.  *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992); *Boos v. Barry*, 485 U.S. 312, 321 (1988); *Lewis v. Wilson*, 253 F3d 1077, 1082 (8th Cir. 2001).  Case law confirms that in a case involving speech in a school context, "There is . . . no precedent for a 'minors' exception to the prohibition on banning speech because of listeners' reaction to it content.  It would therefore be an unprecedented departure from bedrock First Amendment principles to allow the government to restrict speech based on listener reaction simply because the listeners are children." *Ctr. For Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff's Dep't*, 533 F3d 780, 790 (9th Cir. 2008).  *See also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1275-76 (11th Cir. 2004) (teacher's chastising student and referring him for discipline for silent act of protest during Pledge of Allegiance was not justified by concern that act upset other students; "we cannot afford students less constitutional protection simply

because their peers might illegally express disagreement through violence instead of reason."). If these precedents have any practical meaning, then school officials—anticipating any form of discomfort from competing political views—should be prepared to inculcate in their student populations the spirit and magnificence of the First Amendment's place in the shaping of democratic values. *Cf. Hills v. Scottsdale Unified Sch. Dist. No. 48*, 329 F.3d 1044, 1055 (9th Cir. 2003) (stating that "*it is far better to teach students about the First Amendment . . . about why we tolerate divergent views*" than to suppress speech and noting that "[t]he school's proper response is to educate the audience rather than squelch the speaker") (internal quotations and citation omitted); *Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780 (2003) (holding that Defendants violated Plaintiff's free speech rights by suppressing Plaintiff's speech that she could not accept sexual orientation or religious teachings Plaintiff believed were wrong).

The restriction of Plaintiffs' speech based on the supposed reaction of some students to its religious message is a violation of the Plaintiffs' clearly established First Amendment rights. "[I]n our system, undifferentiated fear or apprehension of disturbance is *not enough to overcome the right to freedom of expression*." *Tinker* at 508-09 (emphasis added). Here, Defendants prohibited the expression of a particular viewpoint and religious belief without any evidence that the belief materially and substantially interfered with the operation of the school. Rather, Defendant McDowell restricted Plaintiffs' speech because he believed that some students who partake in or support the homosexual lifestyle might be in his classroom and if the students were in his classroom that they would object to the Plaintiffs' sincerely held religious beliefs.

Defendant McDowell "relies heavily on the matter of *Zamecnik v. Indian Prairie School District*, 207 WL 1141597 (ND Ill. 2007)." (Def. Br. at 10). It is vitally important that this Court is aware that case has been overruled by *Zamecnik v. Indian Prairie School Dist. # 204*,

636 F.3d 874 (7th Cir. Ill. 2011).  In the opinion penned by Judge Posner, the Seventh Circuit

rules in favor of the Plaintiffs, "who disapproved of homosexuality on religious grounds."  *Id.* at

875.  The Plaintiffs asserted "a constitutional right to make negative statements about members

of any group provided the statements are not inflammatory—that is, are not 'fighting words,'

which means speech likely to provoke a violent response amounting to a breach of the peace" by

wearing t-shirts stating "Be happy, Not gay."  Id.  The Seventh Circuit held the following:

> **a school that permits advocacy of the rights of homosexual students cannot
> be allowed to stifle criticism of homosexuality. The school argued (and still
> argues) that banning "Be Happy, Not Gay" was just a matter of protecting
> the "rights" of the students against whom derogatory comments are
> directed. But people in our society do not have a legal right to prevent
> criticism of their beliefs or even their way of life.**

*Id.* at 876, citing *R.A.V. v. City of St. Paul,* 505 U.S. at 394; *Boos v. Barry*, 485 U.S. at 321.  The

Seventh Circuit continued,

> As one would expect in a high school of more than 4,000 students, there had been
> incidents of harassment of homosexual students. But we thought it speculative
> that allowing the plaintiff to wear a T-shirt that said "Be Happy, Not Gay" "would
> have even a slight tendency to provoke such incidents, or for that matter to poison
> the educational atmosphere. Speculation that it might is, under the ruling
> precedents, and on the scanty record compiled thus far in the litigation, too thin a
> reed on which to hang a prohibition of the exercise of a student's free speech.

*Id.* at 877 (internal quotations and citations removed).  Applying Judge Posner's holding in

*Zamecnik*, and the holdings of *Hansen* and *Barber* in this jurisdiction, this Court should grant

summary judgment in Plaintiffs' favor.

## III.    DEFENDANT MC DOWELL VIOLATED PLAINTIFFS' CONSTITUTIONAL RIGHTS GUARANTEED TO THEM BY THE EQUAL PROTECTION CLAUSE

To establish a violation of the *Equal Protection Clause*, Plaintiffs must first show that the

Defendants' actions result in similarly-situated individuals receiving disparate treatment. *See City

of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Gillard v. Norris*, 857 F.2d

1095, 1101 (6th Cir.1988); *Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780, 806 (2003).  If it is shown that similarly-situated persons receive disparate treatment, and if that disparate treatment invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, and the Defendant's actions will be sustained only when they are narrowly tailored to a serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 302 (1993); *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 621 (6th Cir.1997) (quoting *City of Cleburne*, 473 U.S. at 440).

During his deposition, Defendant McDowell admitted that he finds student speech acceptable supporting homosexuality, but finds *unacceptable* student speech that does not support homosexuality based upon *religious viewpoint*.  (Dep. of Defendant McDowell Ex. 103-7 at Ex. 6).  Defendant McDowell stated that he would allow statements of students in his classroom expressing support for homosexuality, but would send a student to the office for making statements unsupportive of homosexuality for religious reasons—this is disparate treatment invading the fundamental rights of free speech and freedom of religion.

Defendant McDowell incorrectly argues that rational basis review should apply.  This is incorrect, Plaintiffs' equal protection claim stems from their most fundamental freedoms of speech and religion for which the Court necessarily applies strict scrutiny review.  *Hansen v. Ann Arbor Pub. Schs*, 293 F. Supp. 780, 807 (2003) (applying strict scrutiny and holding that a School District's disparate treatment of religious individuals regarding the issue of homosexuality violated equal protection); *see also Employment Div. Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 886, n. 3 (1990); *Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 714 (1994); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972). Here, those who hold religious views which do not promote the homosexual lifestyle, such as

Plaintiffs D.K.G. and D.C.G., and students at Howell High School received disparate treatment. *See* (Affidavit of Danielle Kollath at Ex. 3). The disparate treatment invaded fundamental rights, therefore the rigorous "strict scrutiny" standard governs, and the Defendant's actions cannot be sustained because they are not narrowly tailored to serve a compelling government interest.

## IV. PLAINTIFFS' CLAIMS ARE NOT DE MINIMIS

The Supreme Court has unequivocally held that "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Defendant McDowell incorrectly asserts that a violation of First Amendment freedoms equates only a de minimis injury that is outside of the purview of the court; an assertion which misses the point of why the Plaintiffs' filed suit in the first place to redress the deprivation of First Amendment and religious freedoms. Plaintiff D.K.G. was silenced due to voicing his religious beliefs, in response to Defendant McDowell's questioning. Plaintiff D.C.G.'s speech is chilled due to Defendant's McDowell's actions, and Defendant McDowell indisputably removed Plaintiff D.K.G. from class due to his comments regarding his religious beliefs on homosexuality. (Dep. of Defendant McDowell Ex. 17 at Ex. 5); (Affidavit of Brandon Szuch at Ex. 2). Removal from the educational environment in which a student is denied the educational process, while not the injury asserted by Plaintiffs who seek redress from a loss of constitutional freedom, is not de minimis. Plaintiff D.K.G. switched out of Defendant McDowell's course and suffered through the irresponsible handling of local and national media. As the Superintendent of the School District stated, "The media frenzy prompted" by Defendant McDowell "harmed the Glowacki family." (Dep. of Defendant McDowell at 227 at Ex. 6).

Defendant misses the mark in this unsupported argument. Defendant McDowell cites to *Dickens v. Johnson County Bd. of Educ.*, 661 F. Supp. 155 (E.D. Tenn. 1987), which—entirely

off point from Plaintiffs' claims—deals with whether a timeout from class is a de minimus interference with a student's property and liberty interest under the ***due process*** clause.  In *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. Ohio 2007), the Court actually finds in favor of the Plaintiffs failing to dismiss the claim for a de minimis deprivation as "Deprivation of one's liberty . . . can hardly be classed 'inconsequential;' indeed, the Founders endeavored scrupulously to protect this liberty in the Constitution." *Id.*

### V.     THE SCHOOL DISTRICT HAS CHILLED PLAINTIFF D.C.G.'S RIGHT TO FREE SPEECH THEREFORE THE SCHOOL DISTRICT IS NOT ENTITLED TO SUMMARY JUDGMENT ON D.C.G.'S CLAIM

Plaintiff D.C.G. has been chilled and should not be dismissed.  *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002) ("even minor punishments can chill protected speech"); *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994) ("a chilling effect on one's constitutional rights constitutes a present injury in fact"); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996) ("[A]n actual injury can exist when the plaintiff is chilled from exercising her right to free expression.").  Plaintiff is currently a student at Howell High School and holds the same views as Plaintiff D.K.G.  Plaintiff D.C.G. sincerely holds the same Catholic views for which was D.K.G. was punished for voicing on October 20, 2010.  Plaintiff D.C.G. asserts his claim, in his own words, so "That other students or me would not be punished for speaking my beliefs in class."  (Dep. of Drake Glowacki at Ex. 19 at 9).  Plaintiff D.C.G. is subject to the same free speech restrictions and same School District policies, customs, and procedures that were the moving force behind the deprivation of Plaintiff D.K.G.'s constitutional rights. Plaintiff D.C.G. has seen firsthand what voicing his Catholic religious beliefs, such as being suspended from class and being the target of "media frenzy."  Knowing these ramifications for voicing his protected speech, D.C.G. seeks

refuge from the Court to restore his constitutional freedoms and allow him to "not be punished for speaking my beliefs in class."

## CONCLUSION

For the reasons stated in this brief, Plaintiffs request this Court DENY Defendant's motion and GRANT summary judgment in Plaintiffs' favor under Fed. R. Civ. P. 56(f) to any extent an issue addressed in this brief was not fully addressed in Plaintiffs' own motion for summary judgment. (Doc. #24). Plaintiffs, furthermore, request an award of costs and attorneys fees pursuant to 42 U.S.C. § 1986.

Respectfully submitted,

THOMAS MORE LAW CENTER

s/ Richard Thompson
Richard Thompson, Esq.

s/ Erin Mersino
Erin Mersino, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. Mail upon all parties for whom counsel has not yet entered an appearance electronically: None.

THOMAS MORE LAW CENTER
s/ Erin Mersino
Erin Mersino, Esq. (P70886)